## LEWIS HANCOCK v. THE STATE.

### No. 2703. Decided June 15, 1904.

**1.—Charge of the Court—Manslaughter—One Transaction.**

Where the evidence showed that the transaction was so closely related in continuity as to the facts and time that it constitutes really but one difficulty, and that there was no such time intervening between the first trouble and the second that cooling time could possibly enter into the disposition of the case, the charge of the court on manslaughter was properly so framed that it applied the law to the facts so that defendant received the full benefit of all the testimony bearing on the question and guarded defendant's rights with more than usual care.

**2.—Same—Murder—Malice.**

Where the definitions of murder and malice are such as the courts of this State have universally approved, critcisms of such will not be considered.

**3.—Same—Harmless Mistake of Words—Negligence—Treatment.**

Where the court's charge in applying the law to the testimony in regard to gross negligence or manifest improper treatment of deceased, limited this matter to the physicians who attended deceased, there was no error in that the charge used the word "deceased" instead of "defendant," and by which no intelligent jury could have been misled, and where the evidence excluded the theory that anyone else could be guilty of such negligence except the physicians.

**4.—Same—Gross Negligence—Manifest Improper Treatment.**

Where the great weight of the testimony showed the treatment of deceased by the attending physicians utterly devoid of negligence or improper treatment even of an ordinary character there was no necessity to have submitted a charge on the issue of gross negligence or manifest improper treatment.

**5.—Charge of the Court—Manslaughter—Pain and Bloodshed Adequate Cause Per Se.**

Where the main proposition of the court's charge was that pain and bloodshed would be adequate cause, and then left it to the jury from all the facts and circumstances whether adequate cause existed, telling them that where there were several causes, although no one when considered alone might constitute adequate cause, they could consider all such causes as sufficient to constitute adequate cause, there was no error.

**6.—Charge of the Court—Self-Defense—Hypercritical Objection.**

Where the court had given in another portion of his charge a full and fair instruction on the law of self-defense, it was not error to omit the mention of self-defense in another portion of the charge on the law of the degrees of murder, manslaughter, assault to murder and aggravated assault, especially where self-defense was not an issue in the case.

**7.—Same—Threats When Direct, No Charge Necessary.**

Where the only threats, if any, were made at the time and during the progress of the difficulty and in the presence of defendant and directly to him, it was not

necessary to charge on the law of threats, they being a part of the difficulty itself, and not made prior thereto and communicated.

**8.—Evidence—Res Gestae.**

All the acts of violence on part of defendant showing his words, conduct and expressions of vengeance uttered by him while continuing the difficulty and chasing his fleeing enemy are admissible in evidence, as res gestæ on the questions of intent and malice.

**9.—Same—Sufficiency of Proof.**

See opinion for facts held sufficient to sustain a conviction of murder in the second degree.

Appeal from the District Court of Johnson.    Tried below before Hon. W. Poindexter.

Appeal from a conviction of murder in the second degree; penalty, forty years imprisonment in the penitentiary.

The opinion states the case.

*Featherston & Sellars* and *Ramsey & Odell,* for appellant.—Appellant was entitled to the submission of the question of improper treatment and neglect in the language of the statute. The substitution of the word "deceased" by the court for the language "him who inflicted the injury" was a departure from the statutes and law of this State, and denied the appellant the submission of an issue in the case, and is ground for reversal of the judgment of conviction. White's Ann. P. C., arts. 651–653.

The proof showing conclusively that before the fatal blow had been struck the deceased had inflicted a wound on the appellant causing both pain and bloodshed, this, if the jury should so believe, was an act and circumstance constituting adequate cause as that term is understood in law, and the court should have so directly instructed the jury, and the insertion in the charge of the court of the language, "it is for you to determine whether or not all of such causes combined might or might not be sufficient to constitute adequate cause," was error. It was shown by practically all the witnesses who were near enough to see, that the deceased had struck the appellant with a knife or some sharp instrument. This was testified to especially by Mrs. Hancock, by the defendant, by Deputy Sheriff Henderson, by T. P. Turner, and others. So there can be no doubt but that it was abundantly, if not conclusively, proved that the defendant was cut by the deceased, inflicting both pain and bloodshed. This constituted in law adequate cause, and it was both improper and erroneous for the court in the paragraph complained of to charge them as he did and to leave the jury to determine whether or not adequate cause existed.

*Howard Martin,* Assistant Attorney-General, *D. W. Odell,* and *Mason Cleveland,* for the State.—On question of gross neglect; Johnson v. State, 65 S. W. Rep., 92; Jackson v. State, 51 S. W. Rep., 389; Franklin v. State, Id., 951.

DAVIDSON, PRESIDING JUDGE.—Appellant's trial resulted in a conviction of murder in the second degree, with the punishment of forty years in the penitentiary. The parties to the difficulty had lived in the same town and had known each other for years, and so far as the record discloses there was no ill will between them prior to the evening of the tragedy. The tragedy came up in a saloon. Deceased had been in the restaurant, adjoining the saloon, and ordered supper; after ordering it he came out through the saloon and went to the water closet. Returning to the restaurant he was accosted by appellant in the saloon. Speaking to deceased appellant called him Albert. This elicited no reply. Appellant then said, in substance, "I don't think you are much, anyway." To this deceased replied, "I don't think you are much when you are drinking." Appellant then applied a very vile epithet to deceased, deceased being near the front door at the time, and near the cigar case. This latter remark caused deceased to speak. Appellant applied another epithet and struck at deceased. Deceased struck back. One or two licks were exchanged. By the last blow struck by deceased appellant was either knocked, stumbled or fell against the showcase, breaking the glass. They were separated, deceased immediately leaving the saloon, walking out on the sidewalk, turning toward the restaurant where his supper had been ordered. Appellant followed him in the same direction. They continued walking for some distance beyond the restaurant, to a point where the sidewalk intersected another street, some 115 or 120 feet away, deceased being in front until they reached the second street, where appellant made another assault with his knife, which is supposed to have inflicted the wound which produced death. They were separated. At this point deceased sought to avoid further trouble with appellant; but appellant pursued him into a drugstore, making declarations in regard to his intention to kill him. From this place he chased him some distance, where deceased took refuge in a private residence. Appellant broke in the door and began beating deceased. He was finally pulled off deceased. This occurred on the evening of the 17th of February, and deceased died during the night intervening between the 19th and 20th at about 2 o'clock. This is practically the State's case, as to the immediate facts attending the trouble.

Appellant testified that he was in the saloon at the time deceased walked in, and as deceased returned from the water closet appellant spoke to him, and deceased failed to speak in return. "I said 'Hello, old friend Arch, don't you know me?' and he didn't answer me. I hallooed to him, 'Baird, come back here,' and he turned round and started back to me, and I started towards him. I went to take hold of his right shoulder with my left hand to tell him to come on and let's have a drink. He said, 'I don't want anything to do with you at all.' He said, 'I don't think you are much, especially when you are drinking.' I said, 'I don't either.' I said, 'Let's come on and have a drink.' I went to take hold of him again and he struck at me again, and missed me; and then stepped to one side and struck at me again and hit me with

his left hand. After he struck at me the first time I struck at him and missed him. When he struck me the second time he struck me with a knife and it hurt considerable. I saw the knife in his hand. The blade seemed to be broke in two. He cut me across there [indicating] with it. I threw up my hand and raked it down and it was full of blood. I flew all to pieces; I said, 'You will make a knife play, will you? That's a game two can play at.' Bert Clark got up about that time and told him to run or get out. He went out and I followed him. I don't remember anything he said after I got on the sidewalk at all. I followed him and I remember when we were crossing the street over there falling down and getting up again and going over to the drugstore. I don't remember stopping at the drugstore at all. When I came to myself I was washing at the Southern livery stable; they were washing the blood off of me. I don't remember anything else. They told me what had happened. It was something like a dream to me; I couldn't realize it." In regard to the question of deceased being armed, the State's testimony shows that was not true. The State's evidence shows that the fatal blow was struck on the sidewalk at the intersection of the street, while that for the defendant tended to show it was or may have been done in the saloon during the first altercation. These two difficulties were covered by a very short space of time: estimated to be clearly within a minute. This statement is made to bring in review the charge of manslaughter, of which appellant complains. The court gave the statutory definition of manslaughter, among others, that with reference to provocation arising at the time of the difficulty, and the passion must not be the result of some former provocation. It is contended the court's charge had a tendency to impress the jury with the fact that the issue of manslaughter was relegated to the second difficulty, which occurred at the intersection of the streets, thereby eliminating those matters which might engender passion, which should have occurred in the saloon at the first difficulty. We do not believe this contention is well taken from any standpoint of the evidence. The court gave the statutory definition in regard to provocation as before stated, which was the usual stereotyped charge on this question; but having done this, he applied the law, as follows: "Although the law provides that the provocation causing the sudden passion must arise at the time of the commission of the unlawful act, it is your duty in determining the adequacy of the provocation, if any there was, to consider in connection therewith all the facts and circumstances in evidence in the case, and the condition of the defendant's mind from the recent use of intoxicating liquors, and if you find that by reason thereof the defendant's mind at the time of the commission of the unlawful act was incapable of cool reflection, and that said facts and circumstances were sufficient to produce such state of mind in a person of ordinary temper, then the proof as to the sufficiency of the provocation satisfies the requirements of the law; and so in this case, you will consider all the facts and circumstances in evidence in determining the condition of

the defendant's mind at the time he cut and stabbed the deceased, if he did so, and the adequacy of the cause, if any there was, producing such condition, and if you should believe that the defendant committed the act in a sudden transport of passion, sufficient to render the mind for the time incapable of cool reflection, and that such passion was aroused by adequate cause, as adequate cause is herein before explained, then and in such case, or if you have a reasonable doubt whether he so acted or not, in either event you could not find the defendant guilty of a higher grade of homicide than that of manslaughter." The transaction was so closely related in continuity as to the facts and time that it constitutes really but one difficulty. There was clearly no such time intervening between the first trouble and the second that cooling time could possibly enter into the disposition of the case. This is made certain not only from the State's testimony but from the testimony for the defense. And the court recognized this condition, so framing the charge in applying the law to the facts that defendant got the full benefit of all the testimony bearing on this question, whether the first difficulty be treated as a distinct transaction from the second, or whether the blow was struck in the saloon or on the street. Viewing it from any standpoint, we do not conceive how it was possible appellant could have been injured. We are of opinion this charge guarded appellant's rights with more than usual care and caution.

Motion for new trial and brief of appellant criticise some of the definitions of murder and malice, which we think are hypercritical. These definitions are such as the courts of this State have universally approved.

It is further contended the court's charge is erroneous in submitting the issue in regard to gross negligence or manifest improper treatment by some other person than defendant, in that he used the word "deceased" instead of "defendant." But in the application of the law to the facts the court limited this matter of gross neglect or manifest improper treatment to the physicians who attended deceased. By this no intelligent jury could be misled, because the limitation of gross neglect or manifest improper treatment, if it existed, was limited to the physicians there being no other source from which this could have arisen under this record. The charge in regard to this state of the case made by the testimony as a whole is very favorable to defendant. In fact, we are of opinion that if this charge had been omitted it would not have been cause for reversal. If the testimony of the physicians who testified in regard to the treatment is correct, there was not only no gross neglect or manifest improper treatment, but the great weight of the testimony shows the treatment was utterly devoid of negligence or improper treatment, even of an ordinary character. The wound was inflicted by a knife in the back of the head, near the base of the brain. In examining this wound the physician did not discover the knife had entered the skull. The hair was shaved from around the wound; the scalp wound examined, and a probe used which failed to discover the

skull had been entered. There were none of the symptoms attending the patient which indicated the brain had been penetrated from the time of the wound until a few hours before his death; and the only symptom then shown was a headache. In fact the testimony excludes all of the symptoms of brain puncture until about 10 o'clock of the night of the 19th, death occurring some hours later. An opiate was administered by a physician when the headache made its appearance, which seemed to relieve the patient and he went to sleep, and the physician left. Dizziness of the brain, impairment of the eyesight, and such attending circumstances as accompany brain puncture did not accompany this wound at any time. So from either standpoint we do not think there was any error committed by the trial court, whether it be viewed from the charge as given or from an omission of such charge altogether.

There is a criticism of the charge on manslaughter. The court charged the jury, among other things, in this connection that an assault and battery by deceased upon defendant, causing either pain or bloodshed would in law constitute adequate cause. "So any condition or circumstance or combination of conditions and circumstances considered alone or collectively, capable of producing or which creates sudden passion, anger, rage, resentment or sudden terror, rendering the mind for the time incapable of cool reflection, would constitute adequate cause. Where there are several causes to arouse sudden passion, although no one when considered alone might not constitute adequate cause, it is for you to determine whether or not all such causes might or might not be sufficient to constitute adequate cause." The criticism seems to be mostly upon the use of the word "might" in the latter clause quoted. In support of this we are cited to Connell's case, 75 S. W. Rep., 512. On motion for rehearing Connell's case was reversed, because the jury were instructed that an assault producing pain either alone or considered in connection with the other facts and circumstances in evidence, might constitute adequate cause, in the opinion of the jury; whereas the statute provides that the infliction of pain would be adequate cause. That case was reversed on rehearing because the court left it optional with the jury to determine in their opinion the pain might be adequate cause for the reason that the statute itself made that adequate cause; and in the subsequent portion of the charge the adequacy of the cause or pain with the other facts was left to the option of the jury to determine that it might be adequate cause. The main proposition being that whenever pain enters into the question of adequate cause, it was taken as a matter of fact from the jury and made the adequate cause by the law itself. But that is not the charge here. The court did not undertake to tell the jury in the case in hand that pain or bloodshed might be in their opinion adequate cause. He simply left them to determine from all the facts and the circumstance whether adequate cause did exist. He had previously charged the jury

that pain or bloodshed would be adequate cause. We do not believe there was any error in this phase of the charge.

The court charged the jury that, if they should find death was not produced by gross neglect or improper treatment on the part of the physician who attended deceased, then they should next inquire whether defendant was guilty of murder in the first degree, murder in the second degree, manslaughter; and if they should determine those questions in favor of the defendant, then they should next inquire whether he was guilty of assault to murder or aggravated assault. The criticism being that he omitted to inform them in this connection, they might consider whether he was justified under the law of self-defense. This it occurs to us is a little hypercritical. The court gave a full and fair charge on the law of self-defense decidedly favorable to appellant. In fact, we are of opinion the issue of self-defense was not in the case. We have stated in the former portion of the opinion the substance of the facts for the State and defendant.

The charge is further criticised because of its omission to submit the law in regard to threats. The only threats, if any, were made at the time and during the progress of the difficulty, and were made in the presence of appellant and directly to him. It was not necessary to charge on the law of threats under this state of case. It was a part and parcel of the transaction itself; one of the remarks made while the first difficulty was in progress, made to appellant himself. It is only necessary to charge the law of threats when those threats have been made prior to the difficulty and communicated. Whenever the threat is made by the assaulted party to the party making the assault during the progress of the difficulty, it is not necessary to charge these separately. It will be noted there was no attempt to prove any previous trouble between them. The only trouble that had occurred at all began in the saloon, at which place this threat should have been made if made at all. There was no threat made after leaving the saloon; nor was deceased making any attempt to execute any threat. So there was no error in this omission.

Appellant reserved a bill of exceptions to some testimony. After the second difficulty, at the corner of the street, deceased continued his flight, and being closely and hotly pursued by appellant, took refuge in the drugstore, and undertook to secret himself to avoid the wrath of appellant, by endeavoring to get behind the counter. Appellant made remarks to the effect, while in the drugstore, that he wanted him out so he could kill him, using rather vigorous adjectives in this connection. It was further testified that deceased left the drugstore and took refuge in the residence of the Byrnes family; that appellant followed him in there, forced open the door, and began beating him, and had to be pulled away from deceased. Objection was urged to this testimony. These were the acts of appellant and words uttered by him while continuing the difficulty, chasing his fleeing enemy, expressions of vengeance, acts of violence, which was continuous on his part from the incep-

tion of the difficulty in the saloon until he was finally separated from deceased at the Byrne residence. This was clearly admissible. It was certainly res gestæ. It was the acts and words of defendant disclosing the inward intention he was manifesting at the time; and was not only admissible but very material. All the acts of defendant bearing on this question during that entire difficulty from its inception until its close were clearly admissible on the question of his intent and malice. We could not well imagine testimony that was more relevant and pertinent.

There are some other objections to the introduction of testimony which we consider of such light moment they are not discussed or reviewed.

Appellant insists the testimony is not sufficient to justify the verdict. Our opinion is not in accord with this criticism. We think it is amply sufficient. Perhaps the jury relegated this case to murder in the second degree rather than murder in the first, because of the fact that appellant was more or less intoxicated. The judgment is affirmed.

*Affirmed.*

[Motion for rehearing overruled without written opinion.—Reporter.]