### M. B. Dobbs v. The State.

No. 3983.    Decided November 18, 1908.

1.—Murder—Threats—Charge of Court—Statutes Construed.

Where upon trial for murder there was no evidence that the threats of the deceased were communicated to the defendant, but there was evidence of threats by the deceased at the time of the homicide, it was not necessary to charge on the law of threats and to submit article 713 of the penal code. Following Hancock v. State, 47 Texas Crim. Rep., 3, 83 S. W. Rep., 696.

2.—Same—Evidence—Conspiracy—Co-Conspirator.

Upon trial for murder where the defendant was charged with another as principal and the evidence tended to show that the actual shot which

killed the deceased was fired by defendant's codefendant in furtherance of a design mutually formed between them, there was no error in permitting the State to show that after the arrest of said codefendant the officers found certain gun-shells in his pocket such as had been bought by the defendant on the day of the homicide; defendant not being present and no statement from said codefendant being offered in evidence.

### 3.—Same—Evidence—Husband and Wife—Cross-Examination.

Upon trial for murder where the defendant had introduced his wife as a witness who had testified on direct examination to the details of the homicide, there was no error in permitting the State on cross-examination to inquire into matters which had such relation to her direct testimony as to be inextricably and so closely connected with her testimony as to be necessarily important to elucidate her testimony in chief. Distinguishing Stewart v. State, 52 Texas Crim. Rep., 273.

### 4.—Same—Evidence—Clothing of Deceased.

Upon trial for murder, where some of the facts sought to be proved by the introduction in evidence of the clothes of the deceased were confessed and conceded by defendant, but it was evident that the true relation of these facts was made more demonstrable by the production in evidence of the bloody shirt of the deceased than otherwise could have been done, there was no error in permitting the State to introduce said shirt in evidence; and in the presence of the jury have the witness put on the shirt and show a large hole in it that he testified was burned there by powder, etc. Following Melton v. State, 47 Texas Crim. Rep., 451, 83 S. W. Rep., 823.

### 5.—Same—Charge of Court—Murder in Second Degree.

Where upon trial for murder the charges of the court on murder in the second degree, implied malice and manslaughter, when taken together were not subject to the objections that the burden of proof was shifted and was an infringement on the doctrine of reasonable doubt, there was no error.

### 6.—Same—Charge of Court—Manslaughter—Adequate Cause.

Where upon trial for murder the court in connection with the law of manslaughter instructed the jury that any condition or circumstance which was capable of creating and did create sudden passion, etc., rendering the mind of the defendant incapable of cool reflection could be considered, an objection that the court's charge on manslaughter limited the jury in determining the provocation of adequate cause to things transpiring immediately at and just before the difficulty was untenable.

### 7.—Charge of Court—Self-Defense—Apparent Danger—Defendant's Standpoint.

Where upon trial for murder the objection that the court's charge on self-defense was erroneous in that it was an infringement of the doctrine of apparent danger, and that it nowhere told the jury that they would judge the case from codefendant's standpoint in passing on the question of appearances of danger to the defendant, was not borne out by the record, there was no error.

Appeal from the District Court of Titus. Tried below before the Hon. P. A. Turner.

Appeal from a conviction of murder in the second degree; penalty, seven years imprisonment in the penitentiary.

The opinion states the case.

*Ralston & Ward* and *Sam D. Snodgrass,* for appellant. On question of admitting cross-examination of defendant's wife: Richards v. State, 53 Texas Crim., 400, and cases cited in opinion. On question of bloody clothing, cases cited in opinion. On question of charge

on murder in the second degree: Casey v. State, 49 Texas Crim. Rep., 174; 90 S. W. Rep., 1018. On question of self-defense: Stewart v. State, 40 Texas Crim. Rep., 649; 51 S. W. Rep., 907; Phipps v. State, 34 Texas Crim. Rep., 560; 31 S. W. Rep., 397; Graham v. State, 43 Texas Crim. Rep., 110; 61 S. W. Rep., 714.

*F. J. McCord,* Assistant Attorney-General, for the State.

RAMSEY, JUDGE.—This is the second appeal in this case. A report of the first appeal will be found in 51 Texas Crim. Rep., 629. The companion case of Milton Dobbs is reported in 51 Texas Crim. Rep., 113.

A full statement of the case and the facts of the killing are deemed unnecessary. The record is quite voluminous, and many reasons are urged why the case should be reversed.

1. The testimony shows that the deceased was killed on a public road leading from Pittsburg to Mt. Vernon, a short distance from appellant's home. It is claimed by the State that appellant and Milton Dobbs knew that the deceased would pass near where he was killed, and that they met him there for the purpose of injuring or killing him. Appellant's theory was that the meeting was accidental, and that immediately on their meeting, that deceased assaulted appellant. That they engaged in a scuffle over a shotgun, which was broken, deceased retaining the barrel and was in the act of striking appellant with it when he was shot by his son to prevent death or serious injury to appellant, his father, as shown by the testimony of appellant's wife. There is much testimony in the record tending to show a very bad state of feeling between all the parties. Numerous threats are shown in the evidence by appellant to take the life of or harm the deceased. There was also evidence of threats on the part of deceased to kill appellant. Among other things, one Buford Davis testified that about a year before the killing deceased said to him that he was laying for appellant, waiting for a chance to get to kill him; that he said he had rather kill him than to kill a sorry dog; that he had his gun loaded for him for four or five years. Appellant's wife testifies to a threat uttered at the time of and in connection with the killing. There was no evidence that the threat testified to by Davis or any one else had ever been communicated to appellant. The evidence, if true, makes it clear, however, that he must have heard the statement and declaration of deceased at the time of the homicide. We held in the case of Hancock v. State, 47 Texas Crim. Rep., 3; 83 S. W. Rep., 696, that it was not necessary to charge on the law of threats when the only threats were made during the progress of the difficulty directly to defendant. It was held in the case of Alexander v. State, 25 Texas Crim. App., 260, that "It is well settled that

if a person accused of culpable homicide has been threatened by
the deceased with death or serious bodily injury, and such threat
has, prior to the homicide, been communicated to the defendant,
and at the time of the homicide the deceased by any act mani-
fested an intention to execute such threat, the defendant would
be authorized to act upon appearances, in resorting to any means
to protect himself, and a killing under such circumstances would
be justifiable homicide." This rule, in respect to communicated
threats, has often been reaffirmed, and it has so been recently held
by us in the cases of Jay v. State, 52 Texas Crim. Rep., 567; 109
S. W., 131, and Penton v. State, 53 Texas Crim. Rep., 323; 109
S. W., 937. The rule in respect to communicated and uncommuni-
cated threats and the difference between them should be obvious.
For instance, in the case of Arnwine v. State, 50 Texas Crim. Rep.,
254, it was held, in respect to uncommunicated threats, that the
State should not be permitted to show the good character of de-
ceased. Again, in the case last named, it is said "If communicated
threats were not in the case, appellant was ignorant of that fact,
and it could not have operated upon his mind as an inducement
to do the killing, and his defense under these circumstances was
entirely independent of threats." We think, as here presented,
there was no occasion for the court to have given in his charge the
substance of article 713 of the Penal Code as contended for by
appellant.

2. On the trial of the case it was proven by the testimony of
D. H. Carpenter that shortly after the killing he found two guns
in appellant's house, one of which was loaded with new club buck-
shot shells. It was shown by another witness that appellant had
bought from him on the day of the killing seven new club shotgun
shells loaded with buckshot. After his arrest the sheriff Carpenter
found three new club shotgun shells in Milton Dobbs' pocket, and
at the time of such discovery Milton Dobbs was confined in jail.
This testimony is objected to and the proposition is made that the
acts and conduct of a co-conspirator done and committed after the
completion of the conspiracy, and in the absence of the accused,
are not admissible in evidence against him. We should have little
occasion to differ with counsel as to the general proposition, but it
should be remembered in this case that the parties were charged as
principals in the killing, and the facts tend to show that the actual
shot which killed deceased was fired by Milton Dobbs and the evi-
dence tends strongly to show, as the jury must have believed, that
such killing was in furtherance of a design mutually formed be-
tween the parties so to do. It would, therefore, seem to follow
that any fact or circumstances which would tend to prove the guilt
of Milton Dobbs would be likewise admissible against appellant
on this trial. Again, the record shows that no statement or re-

mark or conversation with Milton Dobbs was offered in evidence, but merely the fact of finding the shells in his pocket. This was not the act of a co-conspirator which was being proven. If these shells had been found on the road and near the killing, they would have been admissible; if they had been found in the room occupied by either appellant or Milton Dobbs, they would have been admissible. The fact that they were found in possession of the alleged co-conspirator is a circumstance admissible to show his participation together with appellant in the killing of deceased.

3. It is next objected that the court erred in permitting cross-examination of appellant's wife as shown in the record. Mrs. Dobbs had testified on direct examination that when the gun fired she was just north of her house putting up some chickens. That she heard deceased say in a loud voice, "Pap is going to swear lies on me about that land." That she ran up to where she could see them, and when she got within forty or fifty yards from where her husband was, she saw deceased jump out of the buggy and grab her husband's gun. That they scuffled over the gun a while and it was finally broken, her husband retaining the stock and deceased the barrel of it, and then deceased raised the gun barrel as if to strike when appellant said, "Milt, don't let him kill me," when the son fired. It appears that the witness was not asked on direct examination whether any one else was present, and was not asked anything about deceased's little boy. On cross-examination, evidently believing that her statement was untrue, and desiring to test the accuracy and substantial truthfulness of it, counsel for the State asked her many questions in respect to the little boy of deceased, who was with him, and developed from her, in substance, that she had not seen the boy. They also asked her in reference to whether deceased was driving a horse or a mule; they also asked her many questions in respect to just where she was when the fatal encounter ensued and her opportunity of seeing the killing. We think all the matters were so inextricably and closely connected with matters testified to on direct examination that her testimony would under any fair rule be admissible. This court has gone quite far enough in limiting the scope of the cross-examination of the wife. We think, however, in this case there can be no doubt that the matters inquired had such relation to the direct testimony of the wife and were so necessarily important to elucidate the truthfulness of her testimony in chief, and so obviously related thereto, as not to be the subject of substantial complaint. This case is easily distinguishable from the case of Stewart v. State, 52 Texas Crim. Rep., 273; 106 S. W., 685, and Jones v. State, 53 Texas Crim. Rep., 131; 110 S. W. Rep., 741.

4. Again, complaint is made of the action of the court in permitting the State to offer in evidence the clothing worn by the deceased when shot. Before this was done Dr. J. B. Florence had given minute

and particular testimony as to the location and range of the shots which killed Micham, the deceased, as well as the exact location of the powder burns on the shirt, both at the point of entrance of the wound and on the shirt sleeve. After this had been done the State introduced the sheriff, D. H. Carpenter, who produced the bloody shirt that deceased wore at the time he was shot, and testified it was in the same condition as it was when taken off the deceased except the blood on the shirt was now dry and it was wet when taken off. At the instance of the district attorney the witness put on the shirt in the presence of the jury and showed them a large hole in it that he testified was burned there by powder. The witness also, at the instance of the State, testified there was blood on the collar of the shirt. The production of this article of clothing was objected to by appellant, and appellant also objected to the witness Carpenter putting said shirt on in the presence and sight of the jury upon the following grounds: "Because said shirt did not tend to explain any controverted issue in this case, and it is only offered for the purpose of inflaming the minds of the jury against the defendant in this case. That the defendant had not controverted any fact proven by the State as to the location and character of the wound on the deceased, nor had not controverted any fact proven by the State as to the location or extent of the powder burn on the shirt, but that the defendant's counsel did, in making his objection to the introduction of said bloody shirt in evidence, state to the court, in the presence of the jury, that the defendant admitted that the wound was located exactly as the State's witness, Dr. J. B. Florence, testified it was located, and that the defendant did not controvert any fact proven by the State as to the location of the said wound." These objections were by the court overruled, and testimony admitted, as we have briefly indicated. This bill of exceptions was approved with a lengthy explanation by the court substantially as follows: "It had been proven that the deceased was about the height and size of said witness Carpenter. A wound was found on the side of deceased's head near the top. It was about two inches long and went to the skull. This wound was found for the first time by Dick King after he had shaved him and was combing his hair preparing the body for burial. This was about two or three o'clock in the morning after deceased was killed. The State contended that defendant struck deceased on the head with his double-barrel gun and broke the gun and inflicted this wound on the head and knocked him out of his buggy, and that Milton Dobbs then shot him. There was a great deal of evidence about the wound. Was it contused or incisive? What was its length and depth? When and how and by whom was it found? Defendant proved by physicians that such a wound would bleed immediately and profusely; would saturate the hair and shirt with blood. Much testimony as to color, amount and length of the deceased's hair. There

was much testimony and very conflicting as to the blood in the hair and on the shirt of the deceased; some witnesses saying the whole collar, bosom and shoulders of the shirt were saturated with blood; others saying there was no blood on the shirt and none on his hair. The defendant contended that this wound was not inflicted in the manner contended by the State. No blood in his hair nor on his face nor on his shirt, that the wound must have been inflicted after death, because it did not bleed. It may have been inflicted in putting the body in the wagon or while hauling it home in a wagon over rough roads or in some way after death. It was a sharp issue whether or not the shirt was bloody. I allowed the shirt to be introduced in evidence on this issue. It was bloody all over the collar, shoulders and bosom. This shirt could not have been bloodied from the wound in the side. Where the blood was on the shirt showed conclusively that the blood came from the wound in the head. The wife of the defendant testified that the husband was down on the ground and that the deceased was standing over him with the gun barrels drawn in a striking position, when Milton Dobbs shot deceased to save his father. The State contended that the holes in the shirt sleeves and in the body of the shirt could not have been made by one shot and there was only one, if Mrs. Dobbs told the truth. Carpenter being in size just about the size of the deceased, when the shirt was put on him the jury could see exactly where the shot went through the shirt sleeves and into the body of the shirt, and could see whether or not the deceased was in a striking attitude when he was shot. The State contended that the holes in the sleeves of the shirt and in the body of the shirt showed conclusively that the arm was down by his side when the deceased was shot. The jury could not get a clear idea of it until it was put on the witness Carpenter. For the above reasons I admitted the evidence." We think, in view of the full explanation of the trial judge, that there was no error in admitting this testimony. While some of the facts sought to be proved were confessed and conceded by appellant, it is evident to our minds that the true relation of these facts were made more demonstrable by the production of the bloody shirt than otherwise could have been done. We have not infrequently held that where there was no question in regard to the location of the wounds, their effect and character, that bloody clothing should not be admitted. That it is permissible to introduce such clothing only when the introduction serves to illustrate some point or solve some question or throw light upon the matter connected with the proper solution of the case, but under no other circumstances. Melton v. State, 47 Texas Crim. Rep., 451; 83 S. W., 822, and Cole v. State, 45 Texas Crim. Rep., 225; 75 S. W. Rep., 527, and numerous other cases. But wherever the production of such clothing would, in the light of the whole case, aid the jury in arriving

at the very truth of the matter in controversy, the court should not hesitate to admit its production and exhibition.

5. Again, it is insisted that the court erred in his charge on murder in the second degree, and appellant particularly singles out and levels an objection at the following portion thereof: "If you believe from the evidence beyond a reasonable doubt that the defendant with intent to kill unlawfully shot and thereby killed said J. T. Micham with a gun, and if you find that the facts do not establish express malice, beyond a reasonable doubt, and if you further find that the facts established, beyond a reasonable doubt, that the homicide is not of the grade of manslaughter and is not justified on the ground of self-defense, as the law of manslaughter and self-defense is defined to you in this charge hereafter, then the facts do not tend to mitigate, excuse or justify the act, and there is nothing in the evidence that will reduce the killing below the grade of murder, as these expressions are used in the above charge on murder in the second degree, and you may find implied malice and that the offense is murder in the second degree." It is urged that this charge shifts the burden of proof and was an infringement on the doctrine of reasonable doubt, and was confusing and misleading, and was a charge on the weight of the evidence. In addition to the portion of the charge above quoted, the court also instructed the jury on murder in the second degree, as follows: "The next lower grade of culpable homicide than murder in the first degree is murder in the second degree. Malice is also a necessary ingredient of the offense of murder in the second degree. The distinguishing feature, however, so far as the element of malice is concerned, is that in murder in the first degree, malice must be proved, to the satisfaction of the jury, beyond a reasonable doubt, as an existing fact; while in murder in the second degree malice will be implied from the fact of an unlawful killing.

"Implied malice is that which the law infers from or imputes to certain acts, however suddenly done; thus, when the fact of an unlawful killing is established, and the facts do not establish express malice beyond a reasonable doubt, nor tend to mitigate, excuse or justify the act, then the law implies malice, and the murder is in the second degree; and the law does not further define murder in the second degree, than if the killing is shown to be unlawful, and there is nothing in evidence on the one hand showing express malice, and on the other hand there is nothing that will reduce the killing below the grade of murder, then the law implies malice, and the homicide is murder in the second degree."

The court also gave a charge on manslaughter, and the following charge applying the law of reasonable doubt to the grade of the homicide: "If from the evidence you are satisfied beyond a reasonable doubt that the defendant is guilty of murder, but have a

reasonable doubt whether it was committed upon express or implied malice, then you must give the defendant the benefit of such doubt, and not find him guilty of a higher grade than murder in the second degree. Or if from the evidence you believe, beyond a reasonable doubt, that the defendant is guilty of some grade of culpable homicide, but you have a reasonable doubt whether the offense (if any) is murder of the second degree or manslaughter, then you must give the defendant the benefit of the doubt, and in such case if you find him guilty it could not be of a higher grade of offense than manslaughter." We think, considered altogether, that the charge of the court is not subject to the objections leveled against it.

6. Again, complaint is made of the charge of the court on manslaughter, on the ground, substantially, that the charge of the court limits the jury in determining the provocation or adequate cause to things transpiring immediately at and just before the difficulty. If this were true, it would undoubtedly be a serious indictment of the court's charge, but the complaint seems to be without substantial merit. In connection with the law of manslaughter, the court instructed the jury as follows: "Any condition or circumstance which is capable of creating and does create sudden passion such as anger, rage, sudden resentment or terror rendering the mind incapable of cool reflection, whether accompanied by bodily pain or not is deemed adequate cause, and where there are several causes to arouse passion, although no one of them alone constitute adequate cause, it is for you to determine whether or not all such causes combined might be sufficient to do so. In passing upon the sufficiency of the provocation and on the effects of the passion upon the mind of the defendant you may consider all the evidence in this case."

7. Finally, it is objected that the charge of the court submitting the law of self-defense is erroneous in that as framed it is an infringement of the doctrine of apparent danger, and that it nowhere told the jury that they would judge the case from Milton Dobbs' standpoint in passing on the question of appearances of danger to M. B. Dobbs. This criticism seems not to be borne out by the record. Among other things, in connection with the law of self-defense, the court instructs the jury as follows: "A reasonable apprehension of death or great bodily harm will excuse a party in using all necessary force to protect his life or person, and it is not necessary that there should be actual danger, provided he acted upon a reasonable apprehension of danger as it appeared to him from his standpoint at the time, and in such case the party acting under such real or apparent danger is in no event bound to retreat in order to avoid the necessity of killing his assailant." The same doctrine is applied in another paragraph to the attitude and connection of Milton Dobbs with the case and the facts and circumstances as raising and creating reasonable apprehension of danger in his mind.

The case seems to have been well tried, and, as we believe, there was no error committed by the trial court.

It is, therefore, ordered that the judgment of conviction be and the same is hereby in all things affirmed.

*Affirmed.*