Reversed and remanded.

## ED. SHELTON v. THE STATE.

1. On a trial for murder the opinion of a medical man as to the cause of the death, and whether the neck of the deceased was broken before or after death, was competent evidence. Such evidence is indispensable to the ends of justice in such cases as the present, where there was no witness present at the death of the deceased.

2. When a wife has been examined as a witness in behalf of her husband, the prosecution has the right to cross-examine her for the purpose of

simply testing the truth of her testimony for the defense. A cross-ex-
amination for that purpose is not in violation of the provision of the
code which prohibits a husband or wife from testifying against the
other, except in certain cases. (Paschal's Digest. article 3113.)

3. Evidence of brutal and cruel treatment towards the deceased, prior to the
homicide, does not, under all circumstances, suffice to establish such
malice as will sustain a conviction for murder in the first degree. See
the facts of the present case for an illustration. ·

APPEAL from Guadalupe. Tried below before the Hon. Henry
Maney.

At the March term, 1871, of the District Court for the county
of Guadalupe, the appellant was indicted for the murder of his
little daughter, a child only about eleven months old. His trial
was had at a subsequent day of the term, when the jury found
him guilty of murder in the first degree, and sentence of death
was passed upon him, but execution suspended to await the result
of his appeal to this court.

No witness was present when the child came to its death. The
defendant and deceased, as well as several of the witnesses, were
persons of color. The family of the defendant consisted only of
his wife and the child.

The deceased, it seems, came to her death on Sunday, the nine-
teenth of March, 1871, while her mother was absent from home
on a visit.

John and Dinah Spence, husband and wife, testified at consid-
erable length to having seen the defendant, on sundry occasions,
beat the child with an ox whip lash and with a belt, and burn her
legs with his pipe to such a degree as to leave sores.

Dr. McKnight saw the body of the deceased at the house of the
defendant, in Guadalupe county, on the day after her death. He
found her body and legs badly lacerated and bruised, and her
neck broken; thought that independent of the dislocation of the
neck, the other injuries were sufficient to have caused her death.
This witness was asked by the prosecution whether the neck of the

child might not have been broken after death. The defense objected to the question, because it involved nothing of science or skill, and called for mere matter of opinion. The court overruled the objection, and the witness gave it as his opinion that the dislocation preceded the death in this instance. The defense reserved their objection by bill of exception.

The wife of the defendant was examined in his behalf; and contrary to the testimony of the other witnesses, she testified strongly to the uniform kindness and affection of the defendant towards the deceased. She proved that the defendant told her that he had gone coon-hunting, and the child had fallen off the bed and killed herself. The prosecution was permitted, over objections made and exceptions duly reserved by the defense, to cross-examine this witness upon her testimony for the defense, and also to question her as to her statements made to other persons, to the effect that the defendant was in the habit of cruelly maltreating the deceased; and subsequently the prosecution introduced Dr. McKnight and the father of the witness to prove her statements to them of such maltreatment, which statements she denied upon her cross-examination.

The accused was ably defended in the court below by appointed counsel, who also conducted this appeal in his behalf.

*Ireland, White* and *Jones*, for the appellant.—Express malice must be proved in order to sustain a conviction of murder of the first degree. (McCoy v. The State, 25 Texas, 33; Ake v. The State, 30 Texas, 466.)

It is not necessary to state in an indictment anything which is not necessary to prove (Paschal's Digest, article 2864); which is equivalent to saying it is necessary to state in an indictment everything which it is necessary to prove.

The opinion of Dr. McKnight, that the neck of the child might have been broken after death, was given in the teeth of

law so ably laid down in Cooper v. The State, 23 Texas, 331, " where the jury are as competent as any other persons to deduce the proper conclusion from a given state of facts, the opinions even of scientific witnesses are not admissible in evidence as to the conclusion or inference to be drawn from them." A hod-carrier's opinion would have been as valid in this instance.

The husband and wife can in no case testify against each other, except in criminal ·prosecution by one against the other. (Paschal's Digest, article 3113.) Although the English rule that a wife was in every case incompetent to give evidence, even tending to criminate her husband, was considered and restricted somewhat by lord Ellenborough, yet in Rex v. Bathwick, 2 B. & Ad., 639 and 647, it was held to be " undoubtedly true, in the case of a direct charge and proceeding against him for any offense." We respectfully submit that the spirit of our statute was violated by the cross examination of the wife of the defendant; and still less could she be examined by the State as to any new matter.

*Wm. Alexander*, Attorney General, for the State.

OGDEN, J.—The appellant in this case was tried and convicted of the murder of his own child, about one year old. The verdict of the jury was for murder in the first degree, and the judgment entered accordingly ; from which judgment the defendant has appealed. The indictment is in the usual form for indictments for murder, and we think it sufficient to sustain the charge ; and whether the judgment is for murder in the first or second degree must depend upon the proof, and not upon the peculiar wording of the indictment.

There is no special error pointed out in the charge of the court as given to the jury, and in the absence of a special assignment we are inclined to regard the charge as correct. We are also of the opinion that the court did not err in refusing the charges asked by defendant, as a portion of them had already been given

in the general charge, and others were objectionable as proposi-
tions of law.

Neither can we regard the exceptions as well taken.   The opin-
ion of a medical man as to the cause of the death of the child,
and also as to whether the neck of the child was broken before or
after death, was properly admitted by the court to go to the jury.
Indeed, there are many cases, as in this, where there was no one
present at the death but the deceased, unless it was the defen-
dant, and where it might be wholly impossible to prove the cause
and manner of the death, excepting through the aid of science;
when, with the aid of the scientific experience of medical men,
the whole facts might become as manifest as though rehearsed by
an eye witness.

The cross examination of the wife of defendant was not to make
her testify against her husband, but simply to test the truth of
what she had stated when called for the defense.   We think this
fully authorized under the Constitution and laws, and we see no
error in the ruling of the court in this respect.

But we think there was error in the refusal to grant a new
trial in this case.   The verdict of the jury was for murder in the
first degree, and the judgment condemned the defendant to be
hung.   The verdict and judgment in this case can be maintained
only upon one of two hypotheses, either that the defendant killed
the deceased with express malice, or that he intentionally com-
mitted that crime by means of torture; and we are unable to dis-
cover evidence to establish either hypothesis.

"It is said by high authority that " express malice exists only
when the party evinces an intention to commit the crime."
(3 Bulstrode's R., 171.)   In the record of this case we discover,
in the defendant, a hatred and malice toward the deceased, which
is rarely equaled in brutality; but that hatred was more charac-
teristic of the brute than of the malicious deliberate murderer,
and indicated rather the unfeeling and wanton cruelty of a wretch

than the deliberate and premeditated malice of the murderer. There was no proof of threats or previous attempts to kill, and there was no direct and positive proof that the defendant did kill the deceased. But, from his previous acts of torture and cruelty, and his immediate connection with the deceased, we are not prepared to say that the jury was not warranted in coming to the conclusion that the deceased came to her death at the hands of the defendant.

But we fail to discover, in the evidence, that deliberation of purpose and act. or that malicious intent to kill which would characterize his crime as murder in the first degree, under our law. It true that there was an abundance of proof of acts of brutal torture, but in all that, we can see only an intent to produce pain and suffering, and not to kill. It was the duty of the jury, under the charge of the court, to give the defendant the benefit of any reasonable doubt, and we think that the whole testimony suggests a reasonable and strong doubt whether the defendant did, with malice aforethought and express, murder the deceased under such circumstances as in our law would authorize the taking the life of the defendant. And as the defendant was found guilty of murder in the first degree, and by the verdict condemned to be hung, we think the motion for a new trial should have been sustained by the lower court; and for this error the judgment is reversed and the cause remanded.

Reversed and remanded.