## J. C. Mitchell v. The State.

### No. 3612.  Decided June 25, 1915.

### Rehearing denied October 13, 1915.

**1.—Murder—Manslaughter—Charge of Court.**

Where, upon trial of murder, the issue of murder as well as manslaughter was raised by the evidence, there was no error in submitting a charge on murder.

**2.—Same—Manslaughter—Charge of Court.**

Where, upon trial of murder, of which offense defendant was convicted, the court's charge authorized a conviction for a higher grade of offense than manslaughter on grounds unauthorized by law, under the evidence, the same was reversible error.

**3.—Same—Charge of Court—Murder—Manslaughter.**

Where, upon trial of murder, there was nothing in the evidence upon which to base a finding that defendant had no information from which he could reasonably believe that defendant's wife and deceased had been guilty of adultery, but the court nevertheless so charged the jury, the same was reversible error, it appearing to the contrary from the evidence, and that defendant was in possession of information that led him to believe, and that he did believe that improper relations existed between his wife and deceased, and that the killing took place because of such belief.

**4.—Same—Case Stated—Adequate Cause—Manslaughter.**

Where, upon trial of murder, the evidence showed that defendant did not slay deceased at the first meeting after hearing of the adulterous relation between him and defendant's wife, but that he came in contact with deceased several times thereafter, yet the evidence also showed that defendant was led to believe at the very time of the homicide, that deceased was endeavoring to get defendant's wife to renew such relations, this conduct of deceased, in the light of the information defendant had received prior to that time raised the issue of adequate cause, and the court should have submitted this issue in his charge on manslaughter on that phase of the case.

**5.—Same—Adequate Cause—Adultery—Charge of Court.**

Adultery with the wife is declared by statute to be adequate cause, and the court should have so instructed the jury, and he erred in refusing to do so at defendant's request.

**6.—Same—Adultery—Consent—Conduct of Spouse—Adequate Cause.**

Where, upon trial of murder, it was shown that the wife of the defendant was equally at fault with the deceased in bringing about improper relations

between them, which strongly tended to show were adulterous, the court should have made it clear to the jury that even though the wife consented thereto, yet if such conduct was such as to be an insult and outrage against the husband, adequate cause would exist, and this, although he had condoned the first offense, yet at the time of the homicide believed that deceased was then endeavoring to have such improper relations between him and defendant's wife renewed. Following Jones v. State, 33 Texas Crim. Rep., 492, and other cases.

**7.—Same—Husband and Wife—Evidence—Cross-examination.**

Where, upon trial of murder, the defendant introduced his wife as a witness, and she admitted the adulterous relation between her and the deceased, the State, on cross-examination, was correctly permitted to prove that her statement to the county attorney, immediately after the homicide, was to the effect that deceased had not been guilty of improper conduct, yet it should not have been permitted over the objection of defendant to interrogate her on matters about which she had not been interrogated in her examination-in-chief.

Appeal from the District Court of Ellis. Tried below before the Hon. F. L. Hawkins.

Appeal from a conviction of murder; penalty, ten years imprisonment in the penitentiary.

The opinion states the case.

*Farrar & McRae,* for appellant.—On question of the court's charge: Moore v. State, 128 S. W. Rep., 1115; Egbert v. State, recently decided; Johnson v. State, 43 Texas, 612; McLaughlin v. State, 10 Texas Crim. App., 340; Shannon v. State, 35 Texas Crim. Rep., 2; Winters v. State, 37 id., 582; Pitts v. State, 29 Texas Crim. App., 374.

*C. C. McDonald,* Assistant Attorney General, and *Tom Whipple,* County Attorney, for the State.

HARPER, JUDGE.—Appellant was convicted of murder and his punishment assessed at ten years confinement in the State penitentiary.

Appellant insists that the evidence in this case would only support a verdict for manslaughter, and the court erred in submitting the issue of murder. In this we think he is in error, for although it is apparent from the whole record that appellant killed deceased because of his belief that improper relations existed between deceased and his wife, it is the law of this State that in order to reduce a killing to manslaughter, when this ground is relied on, the killing must take place at the first meeting of the parties after he has become aware of the facts. The State's theory is, that although the record discloses that perhaps the reason why appellant killed deceased was his belief that improper relations existed between him and his wife, yet he had met deceased on several occasions after he came to such conclusion, and on the occasion in question appellant went upstairs in his residence, waited until deceased came out of his store, and shot deceased from ambush when he was doing nothing more than standing talking to a friend. If this is true, the appellant would be guilty of murder, and we would not disturb the verdict on the ground of the insufficiency of the evi-

dence. It is true, if we accept the defendant's theory of the case, and he has some evidence to support it, it would be, as said by appellant's counsel, a typical manslaughter case. But the jury is the trier of facts under our system of jurisprudence, and it is seldom an appellate court feels authorized to reverse a case solely on the ground of the insufficiency of the evidence, no matter what the court's individual opinion of the evidence might be, if the State's evidence is worthy of credit and, if true, will support the verdict rendered.

The most serious question is, and virtually the only question as made by the record, did the court properly submit the law of manslaughter as applicable to the evidence adduced on this trial? No other theory. or idea can be gathered from the reading of this record other than that appellant killed deceased because of his belief that improper relations existed between deceased and his, appellant's wife. It would be a different question, though he believed this, as to whether the killing would occur under circumstances which would reduce the offense to manslaughter. One can not meet the wrongdoer frequently, and while brooding over his wrongs deliberately determine to slay him, and then kill him from ambush and hope to have the offense reduced to manslaughter. Under such circumstances it would be a premeditated killing and not a killing from an impulse of the character defined by the manslaughter statute created by the wrong done or sight of the wrongdoer. We say that there can be no doubt that the killing was occasioned by the belief of appellant that deceased and appellant's wife were guilty of improper relations, because the record suggests no other thought or motive, and the State's witnesses themselves testify to such a state of facts as we think show this beyond a shadow of a doubt. Mr. Odom, a State's witness, says that appellant came to him to borrow money to send his wife away, and he loaned it to him for that purpose. He says "defendant told me that his wife and Sparks were, he thought, too thick, and he had just kept for some time from killing the man and could not stand it any longer if he could not get shed of the woman, and asked me if I would loan him the money. I told him if it was agreeable for all parties and would save trouble I would." After the loan was made, appellant gave the money to his wife and she left. Mr. Odom says that appellant talked to him twice and he seemed greatly troubled about the conduct of his wife and deceased. He and all other witnesses for the State, who lived in the community, show that the conduct of deceased and appellant's wife was a matter of common talk. That while no one knew that any act of intercourse had occurred, yet her frequent visits to the store, and their conduct towards each other, had caused in the community generally an impression that everything was not exactly right. Appellant sent his wife away, but she went only to Dallas; two days thereafter deceased also went to Dallas, and the evidence would show, to a moral certainty, that deceased and appellant's wife were in the same room in a hotel in Dallas. The testimony of the hotel clerk, and Mrs. Brown, housekeeper of the hotel, show this, and Mrs. Brown made them leave the hotel. Appellant's wife now

admits that she and deceased occupied the same room in the hotel, and
there had carnal intercourse. That she went home with deceased
(his wife being absent) and spent the night with him. It is true
appellant was not apprised of this as a fact until after he killed de-
ceased. After this appellant's wife came back home; appellant insisted
on her leaving, telling her that she would disgrace their children by
her course of conduct with deceased. It is not a case where appellant
is alone shown to have had that opinion, but all the witnesses from that
community who testify show that such was the common rumor. A
State's witness, Mr. Dillehay, who stayed at deceased's store while he
was gone to Dallas, went to appellant and explained to him he would
not have stayed at the store for deceased if he had known he was going
to Dallas, where appellant's wife was staying. That deceased misled
him, and led him to believe he was only going to Waxahachie. This
in and of itself was enough to let appellant know that his neighbors
held the same opinion which he held. Appellant says that after his
wife came home from Dallas, and insisted on staying over his protest,
he finally agreed that she could do so if she would not go to deceased's
store again, and have no further communication with him. Appellant
then says that a few days after his wife's return to her home, he saw
deceased making signs to her and waving a handkerchief at her. The
testimony of the State's witness Odom shows that deceased at this time
knew how appellant was viewing the matter. Appellant and his wife
had words over this incident. Appellant says he went on with his
farming until the day of the homicide, when he says, not feeling well,
he was lying down upstairs, and upon looking out of the window saw
deceased again making signs as he thought, to his wife, when he
grabbed his gun and shot.

The court instructed the jury: "If you believe from the evidence
that defendant's wife and the deceased had been guilty of carnal inter-
course with each other prior to the killing, and you further believe
from the evidence, beyond a reasonable doubt, that the defendant had
no knowledge thereof, and no information from which he could reason-
ably believe such to be the case, then you are instructed that the mere
fact of defendant's wife and the deceased having had carnal connection
with each other would not of itself reduce the killing to manslaughter."
Appellant filed written objections to this paragraph of the charge, and
we think the objections well taken. It is an incorrect proposition of
law as applicable to the evidence in this case. It is true that there is
no positive testimony that appellant knew that an act or acts of inter-
course had taken place, yet the record is replete with evidence that he
knew of facts and circumstances and had information that would
authorize him to believe and he did believe that improper relations
existed and that they were guilty of improper conduct. There is noth-
ing in evidence to base a finding that appellant "had no information
from which he could reasonably believe such to be the case." The
record and the entire record shows that appellant was in possession of
information that led him to believe and he did believe that improper

relations existed and the killing took place because of such belief. And in this instance we think the record discloses that his belief was well founded. This paragraph instructed a conviction for a higher grade of offense than manslaughter on grounds unauthorized by law under the evidence. As we view this record, there is but one ground that would authorize a conviction for a higher grade of offense than manslaughter, and that is, that appellant did not slay deceased at the first meeting. For while appellant had this information, the record shows he had come in contact with deceased since receiving such information, and, unless at the time of the homicide, deceased did the acts appellant contends he did do and from such conduct appellant was led to believe that deceased was endeavoring to get his wife to renew such relations, then a jury would be authorized to find him guilty of murder. On this issue the State has evidence that appellant's contention is not correct, but the issue should be fairly presented in the charge, that if deceased made the signs appellant contends he did, and this conduct, viewed in the light of the information appellant had received prior to that time, led appellant to believe it was an effort on the part of deceased to induce appellant's wife to renew the relations, and this conduct raised such degree of anger, rage or resentment as to render his mind incapable of cool reflection, he would only be guilty of manslaughter.

Adultery with the wife is declared by the statute to be adequate cause, and the court should have so instructed the jury, and he erred in refusing to do so at appellant's request. The court in defining adequate cause instructed the jury: "You are charged that insulting conduct of the person killed towards the wife of the party doing the killing is adequate cause; provided the killing occurs immediately upon the happening of the insulting conduct or so soon thereafter as the party killing may meet with the party killed after having learned of such insulting conduct."

Appellant introduced testimony tending strongly to show that deceased and his wife had been guilty of adultery, if it did not conclusively show that fact, yet the evidence and all the evidence would tend to show that this was with the connivance and consent of his wife. As said in Garrett v. State, 36 Texas Crim. Rep., 223, the conduct need not be such as to cause offense to the female herself, and in a case like this, where it is shown that the wife is equally at fault with the deceased, it ought to be made clear to the jury in the charge that even though the wife takes no offense and the conduct is no offense to her, yet if the conduct is such as to be an insult and outrage against the husband, adequate cause would exist. Appellant testifies to a course of conduct continuing from April until the homicide, at one time appellant becoming so incensed at the conduct of deceased and his wife as to cause him to force his wife to leave home, and when she returned, although she agreed to cease all relations with the deceased, yet, if what appellant says is true, he witnessed deceased attempting on two occasions to induce her to renew such relations, the last time being when he killed him. And if appellant believed their conduct had been improper, and

he had condoned the past, yet if he was caused to believe, and in fact did believe, that deceased was endeavoring at the time he shot to have the relations renewed, this would be such insult to him, if it caused anger or resentment as would reduce the offense to manslaughter. Even though deceased had not attempted to renew the relations, the matter would be real to him if he so believed from the acts of deceased, and the charge should be so framed as to so inform the jury. Jones v. State, 33 Texas Crim. Rep., 492; Messer v. State, 43 Texas Crim. Rep., 97; Canister v. State, 46 Texas Crim. Rep., 221; Bays v. State, 50 Texas Crim. Rep., 543; Gillespie v. State, 53 Texas Crim. Rep., 167. In Miles v. State, 18 Texas Crim. App., 156, the court discusses the principles underlying this character of case, and without quoting therefrom we respectfully refer thereto.

Without taking up each paragraph of the charge on manslaughter, and the objections urged thereto, we simply say that appellant is correct in his contention that it does not present the law as applicable to the facts of this case.

An act of adultery is snown, and yet the court does not tell the jury that this in law is adequate cause. It may be the court did not do so because appellant does not testify that he knew the act had occurred, but appellant says that after Dillehay had told him about deceased going to Dallas as soon as his wife had gone there, he believed it as firmly as if he had been present and witnessed it. And while he may be said to have condoned the act by agreeing to continue to live with her, yet if the deceased subsequently did acts which led him to believe and he did believe that deceased was endeavoring to have the relations renewed, and he killed him while he was engaged in such an act, the adequate cause of the adulterous act would become a part and parcel of the act when deceased was attempting to have the relations renewed. As said before, there is but one theory upon which the State would be entitled to a verdict for a graver offense than manslaughter, and that is that appellant had come in contact with deceased since the adulterous conduct, and he did not act at that time, and deceased at the time he was slain was not engaged in conduct which would lead appellant to believe that he was then endeavoring to renew such relations with his wife. The case was not presented to the jury from this standpoint, but a jury under the charge was authorized to convict of murder even though they might have believed that it thus appeared to appellant. The court should tell the jury that adultery with the wife is adequate cause, and if appellant did not know of the adulterous relations, yet the conduct of the parties was such as to lead him to believe that such relations existed, and deceased was endeavoring at the time to have the relations renewed, or it so appeared to defendant, and this rendered the mind of appellant incapable of cool reflection, he would be guilty of only manslaughter. As appellant was found guilty of murder and given ten years in the penitentiary, and the law of manslaughter was not correctly applied to the facts in the case, this will necessitate a reversal of the judgment. And as the case will be reversed, we will

call attention to another matter. As the wife of appellant was introduced as a witness, and she admitted the adulterous relations, the State on cross-examination was and should have been permitted to prove her statements to the county attorney immediately after the homicide, when she told him that she and the deceased had been guilty of no improper conduct. This was legitimate cross-examination: But the State ought not to have been permitted to elicit from her that appellant kept his gun downstairs and slept downstairs. The shot was fired from an upstairs window, and this evidence tended strongly to support the State's theory of a preconceived killing or murder; that the appellant had taken his gun from where it usually stayed and gone upstairs with it and there remained in ambush until deceased appeared in front of his store. This was material testimony adduced by the State from the wife and in support of its theory. This was improper, as the defendant in his examination of his wife had limited it solely to her relations with deceased. Appellant objected to all the cross-examination, and any part of it being admissible. We might not feel authorized to reverse the case because of this improperly admitted testimony, as the exception should have pointed out the inadmissible or objectionable part of the testimony. On another trial, however, if objection is made to this portion of her testimony, and appellant's direct examination embraces no more than it did on this trial, such objection should be sustained, for the State can not prove a material fact by the wife because she has been called to testify by the defendant on an entirely different branch of the case.

The judgment is reversed and the cause remanded.

                                    Reversed and remanded.

[Rehearing denied October 13, 1915.—Reporter.]