E. W. WILLIAMS v. THE STATE.

No. 3885. Decided January 12, 1916.

Rehearing denied February 2, 1916.

**1.—Theft—Evidence—Tracks—Measurement—Opinion of Witness.**

Upon trial of theft, there was no error in permitting the witness to testify that he followed the tracks of the wagon and horses which started from the place where the property was taken to the place where it was found, although he did not measure such tracks, and this was not a conclusion of the witness. Following Porch v. State, 50 Texas Crim. Rep., 335, and other cases.

**2.—Same—Evidence—Identification.**

Upon trial of theft, there was no error in permitting the State's witness to testify that he went to defendant's house and identified the alleged stolen property, and that the sheriff accompanied him. Following Davis v. State, 55 S. W. Rep., 340.

**3.—Same—Evidence—Husband and Wife—Cross-examination.**

Where the wife of the defendant testified that she saw her husband buy the alleged stolen property, there was no error to ask her on cross-examination whether this was not what her husband told her, and when she denied this statement to impeach her by another witness.

**4.—Same—Verdict—Instructions to Jury.**

Where defendant was tried for misdemeanor theft and the jury returned a verdict assessing a money fine only, he was not entitled to a discharge, and the court properly instructed the jury to retire and consider their verdict and if they found defendant guilty they must assess some imprisonment in the jail.

**5.—Same—Sufficiency of the Evidence.**

Where, upon trial of misdemeanor theft, the evidence, although conflicting, sustained the conviction, there was no reversible error.

**6.—Same—Evidence—Husband and Wife—Confidential Communications.**

Where the wife of the defendant testified in her examination in chief that she saw her husband buy the alleged stolen property, there was no error to show on cross-examination that at the time the property was found with her husband she stated that all she knew about it was that her husband told her that he had bought the same, and this was not a confidential communication between husband and wife.

**7.—Same—Verdict—Motion for Rehearing—Practice on Appeal.**

Where appellant, in this court, for the first time, sought to make other objections to the verdict of the jury which were not made in the trial court, the same comes too late and can not be considered.

Appeal from the County Court of Johnson. Tried below before the Hon. B. Jay Jackson.

Appeal from a conviction of misdemeanor theft; penalty, a fine of $25 and thirty minutes confinement in the jail.

The opinion states the case.

*W. B. Featherstone* and *W. E. Myres,* for appellant.—On question of cross-examination of wife: Marsh v. State, 54 Texas Crim. Rep., 144; Hobbs v. State, 53 id., 71; Welch v. State, 46 S. W. Rep., 812.

*C. C. McDonald,* Assistant Attorney General, for the State.—On question of tracks: Myres v. State, 14 Texas Crim. App., 48; Clark v. State, 26 S. W. Rep., 68, and cases cited in opinion.

Upon question of identifying property: House v. State, 19 Texas Crim. App., 227, and cases cited in opinion.

On question of contradicting wife: Myres v. State, 101 S. W. Rep., 1000; Walker v. State, 17 Texas Crim. App., 16; Rodriguez v. State, 23 id., 503; Huffman v. State, 28 id., 174; Johnson v. State, 22 id., 206; Gonzales v. State, 35 Texas Crim. Rep., 33.

On question of amending verdict: Jones v. State, 54 Texas Crim. Rep., 507; Trent v. State, 31 id., 251.

HARPER, JUDGE.—Appellant was convicted of theft—a misdemeanor—and his punishment assessed at a fine of $25 and thirty minutes confinement in the county jail.

Z. C. Jones testified to having lost two bushels of blackeyed peas. In the first bill it is shown he testified: "On the next morning I was again at the house and the sack of peas were gone. At the side of the road I saw where a wagon had turned out of the road in front of said house. The tracks of the wagon and horses were in the soft dirt on the side of the road, and I noticed that where the wagon had stopped at the side of the road some cotton seed hulls had been spilt on the ground; and I also found some of the blackeyed peas on the ground. I walked up the road in the easterly direction to Morgan Peacock's pasture and I saw the track of some horses and a wagon in Morgan Peacock's pasture; the tracks of the horses in Morgan Peacock's pasture were the same as the tracks of the horses that I saw where the wagon turned out of the road in front of the house from which the peas were taken. The horses were shod. I did not measure any of the tracks nor the hoofs of the defendant's horses." Appellant objected to this testimony because it called for the conclusion of the witness; that in the absence of measurement having been made by the witness he should not be permitted to testify that the tracks about which he first testified and the tracks he found in Morgan Peacock's pasture were the same tracks. The testimony in fact would show the witness found the wagon tracks and mule tracks in the road near the house from where the peas were taken, and he traced those tracks and found where some cotton seed hulls and blackeyed peas had been spilled

on the ground, and he walked on and saw similar tracks in Morgan Peacock's pasture. Such testimony was held to be admissible in the case of Porch v. State, 50 Texas Crim. Rep., 335, wherein it was said: "Witness stated that he observed these tracks, and that they looked to him, to be the same tracks—that is, made by the same person both coming and going. We believe that this testimony was admissible, and any objection urged thereto would go to the weight, and not to its competency. As we understand it, this is not a comparison between a track on the ground where the homicide occurred, and a track found somewhere else, or between the appearance of a track made by defendant and a track found on the ground. But it is a comparison by the witness of tracks going and coming, found in juxtaposition to each other, and in the immediate vicinity of the spot where the homicide was committed. Gill v. State, 36 Texas Crim. Rep., 589; Weaver v. State, 46 Texas Crim. Rep., 607."

The next bill complains that Mr. Jones was permitted to testify that, when he went to appellant's house, and identified the peas there found as his peas, the sheriff was with him. Appellant objected to the witness being permitted to testify who was with him. This was clearly admissible, and such testimony would have no tendency to cause the jury to believe the sheriff thought appellant guilty. At any rate, there was no error in permitting the witness to state who accompanied him. It is also contended that it was improper to permit the witness to testify he identified the peas as the peas stolen from him, defendant not being present. This has been clearly settled adversely to appellant's contention in Davis v. State, 55 S. W. Rep., 340.

Defendant placed his wife on the stand as a witness and had her testify that she was in Cleburne and saw her husband buy the sack of blackeyed peas found at their home from a man. That her husband paid $3 for the peas. These were the peas Jones claimed to identify as his peas, and on cross-examination the State asked her if she did not tell Sheriff Cooper, while Cooper and Jones were at their house, "that all you knew about the peas was that your husband told you he had bought them." She denied making this statement. Appellant objected to this question, as he had asked his wife nothing about what he had told the sheriff. The question was proper cross-examination, as appellant's wife, at his instance, had testified she saw him purchase the peas and pay a man $3 for the peas. She could be impeached on that testimony the same as any other witness, and there was no error in permitting the sheriff to testify that Mrs. Williams had told him "that she knew the peas belonged to them, because her husband told her he had bought the peas."

After they had retired and considered the case, the jury returned into court the following verdict: "We, the jury, find defendant guilty as charged in the indictment and assess his punishment at a fine of $25." When this verdict was read by the clerk, the court requested the clerk to hand the papers to him, when the court instructed the jury, they must retire to their room, and if they found appellant guilty,

under the law, they must assess as part of the punishment a jail penalty. Appellant objected to this proceeding, contending that as the verdict as at first returned did not assess a jail penalty, but only assessed a pecuniary fine, the defendant should be discharged. The court acted properly in refusing to receive the verdict, and instructing them under the law, to return to their room, and if they found appellant guilty, they must assess some imprisonment in the jail. As the verdict first returned found appellant guilty, he was not entitled to be discharged from custody, and until the jury had been discharged, the court could, and properly did, require them to return a verdict in accordance with law.

The evidence is conflicting, but under the testimony of Mr. Jones appellant would be guilty, and the jury so find, and we are not under such circumstances authorized to disturb it.

Affirmed.

*Affirmed.*

ON REHEARING.

February 2, 1916.

HARPER, JUDGE.—Appellant has filed a motion for rehearing and insists the court erred in holding that there was no error in permitting the sheriff to testify as to what Mrs. Williams told him, contending that this was permitting her to be contradicted by a confidential communication made to her by her husband. Mrs. Williams was not asked what her husband told, nor asked if her husband told her anything. She testified she was present when her husband bought the peas. On cross-examination she was asked if she did not tell the sheriff, at the time the peas were found, "that all she knew about the peas was that her husband told her he had bought same." As she had testified she was present when her husband bought the peas at his instance, it was permissible to show she had made a different statement to the sheriff, if she did so, as tending to impeach her. The sheriff was only permitted to testify to what he said Mrs. Williams had told him. This was her statement made to the sheriff and was in no sense a confidential communication between the husband and the wife. The husband was not even present when she made the statement.

The only other ground in the motion is appellant contends that the court erred in what he said to the jury when he refused to receive the verdict first brought into court. The only objection urged at the time, as shown by the bill, is as follows:

"That the defendant then and there objected to the remarks as made by the court because same were made orally and were highly improper, and further objected because the jury had returned the verdict, which each juror said was the verdict of the jury; and it was improper for the court to again instruct the jury to retire because the verdict as read by the jury was tantamount to his acquittal and the court should have discharged the defendant."

Appellant seeks in this court to make other objections, not then made

to the trial court. If he desired to make such objections as he now seeks to make, he should have made them at the time, and doubtless the trial judge would have conformed the proceedings in accordance with such request. It is too late to raise such matters in this court for the first time.

The motion is overruled.

*Overruled.*

DAVIDSON, JUDGE, not present at consultation.