## ALFORD JAMES BARROW V. THE STATE.

No. 16600.  Delivered May 2, 1934.
Rehearing Denied June 20, 1934.

The opinion states the case.

*Mays & Mays*, of Fort Worth, for appellant.

*Lloyd W. Davidson*, State's Attorney, of Austin for the State.

LATTIMORE, JUDGE.—Conviction for robbery; punishment, ten years in the penitentiary.

We see no need for setting out the facts at any length. The office of the American National Insurance Company in Fort Worth was held up and robbed on the 18th day of April, 1933. Two men acted together in the commission of the offense. Appellant was identified positively as one of the men by two witnesses who were present at the time. The defense was an alibi. Appellant introduced, among other witnesses, his wife who testified that on the morning of the 18th of April, 1933, she in company with other members of their family and a Mrs. Sence went to Dallas and spent the entire day there. She testified that appellant was out of work, and had been looking for work for quite a while; that he had worked for the welfare society, getting paid for his work in food. A large number of witnesses were brought from Dallas who testified to the fact that appellant was there on said day. Most of them based their affirmation as to the date upon the fact that on that day there was a sever hail storm in the city of Dallas. Unfortunately for the defense, the State produced the weather observer and by him proved that there was no hail storm in Dallas on or about that date.

There are six bills of exception. Bill No. 1 complains because after appellant's wife had testified in his behalf that he was not in Fort Worth at the time of the alleged robbery, but had gone to Dallas that morning in search of work, and had been out of work for quite a while,—the State was allowed to recall her to the witness stand and ask her if appellant did not buy an automobile two or three days after the alleged robbery, to which, over objection, she was compelled to answer, that he did. It is urged this was violative of the statute forbidding the use of the wife's testimony against her husband and contrary to former opinions of this court. We do not so understand either the law or our holdings. There is nothing in Art. 714, C. C. P., so declaring save that the last clause of same states that the husband or wife shall in no case testify against the other, except the offense be committed by one against the other. They may witness for each other, by the same statute, and the only question here is, how far legitimate cross-examination may go of the spouse who has voluntarily

taken the stand and testified for the husband or wife, as the case may be.

As above stated, appellant's wife testified for him that he did not commit the robbery because he was not in Fort Worth when the robbery occurred, and she went into much detail in setting out his activities on that day and his efforts to get work. After leaving the witness stand, she was recalled by the State and gave the testimony above referred to relative to her husband having purchased an automobile two or three days after this robbery.

Mr. Branch in his Annotated P. C., Sec. 152, states the rule as follows: "The wife of defendant may be cross-examined as to the matters testified by her on direct examination, and the State is entitled to ask her * * * other questions as tending to show the accuracy of her direct testimony, and may apply the usual tests of cross-examination as to all matters germane and pertinent to her testimony given on her examination."

Many cases are cited, among them Dobbs v. State, 54 Texas Crim. Rep., 554, and Swanney v. State, 66 Texas Crim. Rep., 293. We might be justified in saying that it is generally understood that the average thief or robber does not care to work, and the working man is not usually a thief or robber,—which facts are known to all men. In this case, while relying chiefly on an alibi, the defense seems to have sought to establish that appellant was a man who wanted work and needed it and sought for it. His wife testified, as above stated, to his previous efforts to get work, and that he was trying to get work on the day of the robbery. The legitimate effect of the testimony of the wife was not only to establish that appellant was away from Fort Worth at the time of the robbery, but also to establish that he was a working man, and was without money, and was in necessitous circumstances at the time. Under the authorities, the State might properly ask the wife on cross-examination as to any matter gemane and pertinent to any issue thus advanced by her in her husband's behalf, or any theory of the case in his defense which is supported by her testimony. In Swanney v. State, supra, the defense sought to reduce a murder to manslaughter by the testimony of the wife, to the effect that she told her husband the very morning that he killed her betrayer that such betrayer was the father of her unborn child. The State, in cross-examination of said wife, asked her if she did not tell B that a month before the killing she told her husband that such betrayer was the father of her child; when she denied having made such statement to B, he was permitted to

be used by the State for the purpose of impeaching her, and the same objection to this testimony was advanced as is now advanced on behalf of appellant. It was admitted in the Swanney case that the object of the defense in having the wife testify that she told her husband on the morning of the killing the facts above stated, was to support a plea for a verdict of manslaughter, and the State claimed the right to cross-examine the wife and to impeach her by the introduction of its proof as set out. This court held the matter germane, and that it was proper cross-examination. In the Dobbs case, supra, we said: "We think all the matters were so inextricably and closely connected with matters testified to on direct examination that her testimony would under any fair rule be admissible. This court has gone quite far enough in limiting the scope of the cross-examination of the wife. We think, however, in this case there can be no doubt that the matters inquired had such relation to the direct testimony of the wife, and were so necessarily important to elucidate the truthfulness of her testimony in chief, and so obviously related thereto, as not to be the subject of substantial complaint."

In the case before us, the testimony that almost immediately after the alleged robbery, in which over fifteen hundred dollars were taken, appellant,—a working man and out of funds, and looking for work, and accepting work whose pay was in foodstuffs,—bought an automobile,—was a most material circumstance, and directly contrary to the witnesses' testimony in behalf of appellant upon his claim of alibi, and also as affecting her claim that he was in poverty and need. See also Houseton v. State, 83 Texas Crim. Rep., 453; Cochran v. State, 112 Texas Crim. Rep., 390; Jones v. State, 38 Texas Crim. Rep., 87. In his brief appellant cites Mitchell v. State, 77 Texas Crim. Rep., 404. As we understand that case it is opposed to appellant's contention here. The wife in that case testified for her husband, admitting adulterous relations with deceased,— belief concerning which was relied on to reduce the case from murder to manslaughter. The State was held entitled to cross-examine her as to, and also to prove matters contradicting this claim.

Bill of exceptions No. 2 sets up that after having proved by appellant's wife while a witness that he bought an automobile two or three days after the alleged robbery,—the State was permitted to recall her and ask her over appellant's objection the following question: "Did you have any conversation with anybody about whether they could take your car away from

you on account of the money that came from this robbery?" This bill shows that appellant's objection was that the matter was immaterial and irrelevant, and that this objection was sustained. We find some difficulty in our effort to ascertain in fact the basis of exception as set out in the bill, i. e. whether the complaint is of the fact that the State asked the above question, or because the court declined to declare a mistrial,— or because he refused to instruct the jury. As far as we can tell from the bill the State may have had in mind in asking the question set out, an inquiry as to some conversation had by the witness as to statements directly pertinent to what had been said by her on direct or legitimate cross-examination. The fact that witness and her husband had a car at the time of the alleged robbery is evident. They went to Dallas that day in a car, according to the wife's testimony. Was this the car referred to? We can not tell. The question refers to "Your car away from you." We confess we fail to see any such probable or possible harm as a result of asking the above question, as to call for reversal of the case. The matter is altogether too intangible and indefinite.

Bill No. 3 sets out that appellant's wife was at home when the officers arrested her husband. She was asked if she did not tell the officers who came to arrest appellant that he was not there, and she answered that she did not so tell them. As far as we can tell from this bill no objection was made at all until after the witness had answered the question. There was no request that the answer be stricken from the record, or that the jury be instructed not to consider it. Having sworn that she knew her husband was not guilty because he was with her at another and different place at the time of the alleged robbery, a wife who later falsifies in an effort to assist her husband to escape arrest, in our opinion, can be asked questions such as are set out above as affecting the truth of her alibi testimony. It is stated as a general principle that a wife called to testify for her husband may be impeached in the same way and to the same extent as any other witness. Shelton v. State, 34 Texas, 662; Hampton v. State, 45 Texas, 154; Magruder v. State, 35 Texas Crim. Rep., 214; Link v. State, 73 Texas Crim. Rep., 82; Taylor v. State, 74 Texas Crim. Rep., 3. The bias or interest of a witness is material, and this applies to the wife as well as any other witness. Roberts v. State, 74 Texas Crim. Rep., 150; Williams v. State, 78 Texas Crim. Rep., 647; Houseton v. State, 83 Texas Crim. Rep., 453; Bell v. State, 85 Texas

Crim. Rep., 475; Gutierrez v. State, 96 Texas Crim. Rep., 327; Soderman v. State, 97 Texas Crim. Rep., 23.

Bill No. 4 sets out an attempted impeachment of the wife, but the impeaching testimony brought out by the State,—as reflected in the bill,—does not support or establish facts seemingly the basis of the objection to the question. The bill presents no error.

Bill No. 5 is in confusion. The argument said to be objectionable and that set out in a special charge instructing the jury not to consider same, are entirely at variance, and it is impossible for us to tell from the bill just what the argument was; or whether there be any sufficient ground for the objection thereto. We cannot tell from the bill itself whether the record shows that Sargeant,—whose failure to testify was commented on by counsel both for the State and appellant,—saw appellant at the time of the robbery, or was in position to identify him, or not. The State was challenged by appellant's counsel in argument as to why they did not use Sargeant as a witness. Replying to this, State's counsel seems to have said, as set out in one place in this bill, that they did not use Sargeant because he did not see appellant. It would not be any stretch to hold this statement invited. Whether the record supports this statement or not, does not appear in the bill. We must presume that the record does support it. We quote from Tweedle v. State, 29 Texas App., 591: "The bill must be so full in its statements that, in and of itself, it will disclose all that is necessary to manifest the supposed error." For aught we know from this bill the testimony may have shown without question that Sargeant was in one of the four or five rooms occupied by the insurance company other than the one in which appellant was. Sergeant may have been "taped" by appellant's companion.

We do not think bill of exceptions No. 6 presents reversible error. It is unquestionably true that there was and is a great deal of discussion in the papers in reference to the matters referred to, and it would be difficult for us to say that this court might not take judicial cognizance of such fact.

Finding no error in the record, the judgment will be affirmed.

*Affirmed.*

### ON MOTION FOR REHEARING

MORROW, PRESIDING JUDGE.—Appellant, through his counsel, very urgently insists that in the cross-examination of the

appellant's wife, who testified to an alibi in his behalf, Article 714, C. C. P., was violated. In that article it is declared that neither spouse shall testify against the other on the trial of a criminal case unless the case is one in which the prosecution is for an offense committed by one against the other.

From Bill No. 1 it appears that the robbery was committed at Fort Worth on the morning of April 18, 1933, at eight o'clock. Appellant introduced his wife as a witness in his behalf. She testified that on the morning of April 18th, before the robbery took place, the appellant went to Dallas and remained there until after the robbery. She further testified that she and her husband went to Dallas to look for work; that he could not find work although he had been promised a job there. Answering a question propounded by State's counsel, the witness, over objection, testified that her husband had bought an automobile some two or three days after the robbery. The appellant having introduced his wife as a witness, also tendered her for legitimate cross-examination. In holding the cross-examination in the present instance not violative of the rule, it is thought that the following decisions of this court are in point: Burdett v. State, 116 Texas Crim. Rep., 264; Smith v. State, 120 Texas Crim. Rep., 34; Bell v. State, 120 Texas Crim. Rep., 84. Other precedents regarded as supporting the ruling of the court in receiving the testimony will be found collated in Vernon's Ann. Tex. C. C. P., 1925, Vol. 2, p. 764. Among them are Bell v. State, 88 Texas Crim. Rep., 64; Laake v. State, 93 Texas Crim. Rep., 84; Gaunce v. State, 97 Texas Crim. Rep., 365; Harris v. State, 93 Texas Crim. Rep., 544. Other illustrations will be found in the text mentioned.

From Bill No. 2 it appears that State's counsel asked the witness, Mrs. Myrtle Barrow, the following question: "Q. Did you have any conversation with anybody about whether they could take your car away from you on account of the money that came from this robbery?"

From the bill as presented here, it is shown that the court sustained the objection to the question.

Our re-examination of the record leaves us of the opinion that the motion for rehearing should be overruled, which is accordingly ordered.

*Overruled.*