DAVID WILLIAMS V. THE STATE.

No. 22732. Delivered February 9, 1944.
Rehearing Denied March 29, 1944.

The opinion states the case.

128

*Horace H. Shelton* and *Wright Stubbs*, both of Austin, for appellant.

*Ernest S. Goens*, State's Attorney, of Austin, for the State.

BEAUCHAMP, Judge.

Appellant was convicted of the offense of rape by force of Jeanne Hogan, a female under the age of eighteen years. The penalty assessed is death.

The prosecuting witness was working at the Kress Store in Austin and was relieved from duty at 7:00 o'clock, p. m., on December 18, 1942. She caught a bus which discharged her at the intersection of South First Street with Live Oak in the extreme south portion of the City of Austin at 7:30. This was about a mile and a half from her home. It had been her custom to call her parents by telephone before taking a bus and have them meet her in the family car. Upon leaving the store she did not have time to make the customary telephone call and catch the 7:15 bus on Congress Avenue. Upon alighting from the bus she went to a small store nearby and asked for the use of a telephone but was informed that they had none. She then started down First Street in the direction of her home. The evidence describes an area adjacent to the city limits which is little more than a thickly settled rural community. She had proceeded a distance of about five or six city blocks when a negro boy passed her going in the same direction. Soon she met either the same boy returning or another person, who stopped to inquire if she knew the way to Boatman's Dairy. She answered in the negative, and walked hurriedly on. He approached her and attempted to put his arms around her. Upon her protest, he attacked her, first forcing her to the ground on the right hand side of the road. She managed to get up and ran about fifty feet to the opposite side of the road, where he caught her and again forced her to the ground, each time after what is described by her as a desperate struggle. He then dragged her across a barbed wire fence and something like seventy-five yards into a field near an old well where the attack caused her to become unconscious. She revived, however, and was able to testify completely to his conduct. While it was after dark, the moon was shining and she was able to give the officers what proved to be a very accurate description of him and led to the arrest of David Williams the following morning. He made her promise to not tell about it before he would release her and then left in the direction of the San Antonio Road, telling her he would see her in San Antonio. When he left her she made her

way to a house about two hundred yards distant and communicated with her parents, who immediately came for her and took her to Brackenridge Hospital. She was treated by Dr. Forrest A. White, who gave her a most thorough examination, and in very concise and convincing language corroborated in every detail her story of a brutal attack. Her father called the city officers and, following the information which she gave, they went to the scene and found convincing evidence of the further details of the manner of the attack. At the place by the road they found a button off her cloak, then her cloak at another and a ribbon from her hair and found her panties near the well. It is sufficient to say that subsequent investigations made by the officers developed a remarkable accuracy on her part in detailing the things that occurred. The only contradiction given by anyone is the denial by appellant of his guilt and his testimony of an alibi which he attempted to prove by numerous other witnesses. A careful examination of the testimony of these other witnesses reveals nothing in his favor on the question of an alibi, and presents an exhibition of contradictory statements on material matters, which fully justifies the jury in disregarding their testimony.

We quote the following excerpts from her testimony on the subject of identification of the accused as her assailant:

"The defendant sitting there is the one that attacked me that night. I recall that he had on a light sport coat, dark pants, and dark shoes. I gave the description to the officers that he was around seventeen or eighteen, had a round face, and had hair that stuck up in front and was smoothed down in the back."

The appellant denied that he was in the vicinity at the time of the commission of the crime, which is fixed at a time between 7:30 and 7:50 o'clock, p. m. He says that he caught the 7:30 bus in the 2000 block on Guadalupe Street where he worked, on the opposite side of the city. He rode that bus to a point on Congress Avenue and transferred to a South Austin bus, arriving at his destination which was admittedly the same as that for the prosecuting witness, except that it would have been about 8 o'clock, several minutes after the assault was committed. Contradicting this statement, W. G. Henderson the bus driver, testified that he knew the accused well; that accused often rode his bus, which arrived at that point on the half hour, and that accused was on the 7:30 bus on the date the offense was charged to have been committed. A Mr. Glosson, who was at this point waiting to meet his own daughter, testified that the accused— as well as the prosecuting witness—alighted from the 7:30

bus. Mr. Martin, the owner of the store where the young lady applied for a telephone, gave the same testimony and says the accused came into his place at that time and purchased 3¢ worth of candy, to this extent corroborating the prosecutrix completely and contradicting the alibi of the accused. The testimony of these three witnesses was positive and unequivocal. A number of witnesses placed on the stand by the defense told of his arrival at his home some distance away, shortly after 8:00 o'clock, which is consistent with the testimony of the prosecutrix and, as it appears, an impossible time for him to arrive at home if he had reached his destination at the time indicated by him. In an attempt to disprove the story told by prosecutrix the defense had the father and one Perry to walk the distance from the end of the car line to his home and they concluded that it would take twenty-five minutes. Thus the defense made impossible appellant's own story of his arrival at that place at the time given by him.

Considering the nature of the case, the horror of the crime, and the many inconsistencies of the defense, which are much more than are herein enumerated, the jury's verdict of guilt should have been expected. There is no contention that the evidence was insufficient and the foregoing statement will serve as a basis for the consideration to be given to the questions of law presented on the appeal.

Four bills of exception are found in the record, which will be considered even though they do not appear in conformity with statutory requirements to the fullest extent.

Bill of Exception No. One complains of the introduction in evidence of a written confession signed by appellant a few minutes after his arrest on December 19th. No serious question is presented in this bill. The statement complies with all legal requirements. If any issue of fact was in reality raised by the testimony of appellant, that was submitted to the jury and their finding was authorized.

Upon being arrested, the officers carried appellant to the fifth floor of the county court house which is occupied in part by the jail and also the living apartment for the jailer. Adjacent to his apartment is a room available to the public used as a reception room, or office, by the jailer, and it was in this room, or office, that the confession was reduced to writing and signed by appellant. He testifies to no acts of cruelty but denies the voluntary nature of his statement. He says he was scared

and that when they asked him questions he just told them to go ahead and put it down. He said that one of the officers told him that he was going to make it hard on him if he didn't. That was his reason for making the statement. There is not the least indication from the surroundings that any undue influence or pressure was exercised and no intimation of any punishment having been inflicted or threatened to induce the statement. On the other hand, several of the officers and two substantial citizens of Austin, one an undertaker and the other, manager of the Retail Merchants' Association, were present and signed as witnesses, all of whom testified before the jury as to the things which occurred prior to and at the time of the making of the statement. Their testimony contradicted appellant's story of the manner of making the statement. The assistant district attorney was unusually cautious in receiving the statement and there is no contention upon the part of appellant that he applied any pressure or changed any material statements from the way appellant gave it. The jury's finding of guilt was amply supported by positive and reasonable evidence entirely independent of any consideration which might have been given to the written confession. It is not a case where the conviction depends entirely upon the confession. The prosecutrix positively identified appellant as her assailant, and her evidence was so clear and concise that the defense gave no cross examination of her. While all of this may be true and yet the introduction of a written confession, improperly obtained, would be reversible error, still the facts are here recalled in connection with our consideration of the reasonableness of the State's contention that the confession was voluntarily made. In a case where the guilt of the accused is doubtful and admitted facts cast a reasonable doubt as to the truth of the details of a written confession, a different situation would naturally be presented. Proof of the truth of the statement will not make admissible a statement obtained by an influence on the accused. At the same time we believe it to be helpful in considering the circumstances under which it was made to determine the question of its voluntary nature. A guilty party would be more apt to make a voluntary statement than would one who is innocent. Consequently, the truth of the many details given in a written confession so soon after the arrest may, under the circumstances of the instant case, aid the position of the State. On that, the evidence is overwhelming, while many of the things detailed by appellant on the witness stand are contradicted even by his own witnesses. We cannot say the jury was not authorized to disregard appellant's contention and to consider the confession, if in fact they did do so.

Bill of Exception No. Two relates to the cross examination of appellant's wife and pertains to contradictory statements given in writing by her on the day of her husband's arrest. No error can be predicated on the complaints found in this bill. A portion of the cross examination relates altogether to matters testified to by her on direct examination, at the instance of her husband, and had no other effect than for impeaching purposes. Smith v. State, 48 S. W. (2d) 646; Bell v. State, 49 S. W. (2d) 473; Moten v. State, 49 S. W. (2d) 754; Schaffer v. State, 135 S. W. (2d) 717; see also cases listed under Note 11, Vernon's Ann. C. C. P., Art. 714; Branch's P. C., Sec. 153.

Another phase of the objection listed in this bill of exception, relating to the cross examination of appellant's wife, complains that the State elicited from her the statement: "David was dressed that night just like he was when he went to work, he had on dark pants and a light coat." Nothing was mentioned in her direct examination about the manner of his dress, and it is contended that it was error requiring the reversal of this case to require her to give this testimony against her husband, in violation of Art. 714 of the Code of Criminal Procedure. A very delicate question has been presented which must properly be considered in connection with all of the evidence in the case. It will be noted that the prosecuting witness identified appellant as the man who attacked her and gave a description of him which was so accurate that no attempt was made in the trial of the case to contrast him with it. It led to his arrest. Incidentally, prosecutrix also described his coat, trousers and shoes, but there is no evidence that this part of the description aided the officers in identifying him or that it served any purpose in the prosecution. Furthermore, he was the first witness to testify in his behalf and he stated he had on a light grey coat, dark pants, and dark shoes. A number of witnesses, who were called by him before his wife testified, also stated that he had on a light coat and dark trousers. Some said he had on white shoes but this was contrary to his admission. His wife did not testify about the shoes, and there is not in the evidence a statement by any witness which contradicts that quoted as the basis of the complaint. In Burdette v. State, 32 S. W. (2d) 360, an opinion by Judge Morrow, this would appear to be a matter of material consideration on the issue she sought to deny, indirectly if not directly. Appellant set up the defense of an alibi which was directly denying the identification of him by the prosecutrix. The evidence of his wife does not aid the alibi but in a very indirect and remote way is intended to and has no other purpose than to refute the identification of her husband by Miss Hogan. A

cross examination of her on the subject of his clothing would appear to be appropriate in relation to Miss Hogan's evidence and that given by the wife on direct examination. We have read many discussions by this court on questions similarly presented, but the case most in point is that of Barrow v. State, 72 S. W. (2d) 594, in an opinion by Judge Lattimore, where the matter is discussed at great length. Further discussion of the theory upon which the cross-examination of the wife was held admissible in that case is not necessary at this time. It is much more appropriate in the instant case than in the Barrow case. See also 44 Tex. Jur., Secs. 74, 75 and 76, pp. 1035-1037.

Furthermore, that portion of the Bill of Exception presenting the latter complaint was not approved by the court. The testimony was not permitted to go to the jury and in no event could error be predicated on it.

Bill of Exception No. Three complains of the opening argument of the assistant district attorney in behalf of the State, in which he made reference to the case on trial as being the worst that had been brought to his attention. Such statement might, under some circumstances be construed to refer to things not in the record and to be an attempt to place before the jury his conclusion with reference to such matters. As presented, the bill would not warrant any such conclusion as that. Nevertheless, when objection was made to it, the attorney withdrew it and the court gave instruction to the jury, withdrawing it from their consideration. We are unable to find anything inflammatory about this statement or that it was something which could not effectively be withdrawn from the jury.

Bill of Exception No. Four embraces the various exceptions to the court's charge. We do not feel that we will be warranted in here discussing all of these exceptions. It is sufficient to say that we find no such fault with the charge as that embraced in the exceptions. The court properly defined an alibi and submitted appellant's affirmative defense. He limited the jury's consideration of all testimony introduced in evidence when such limitation was proper. Every issue raised by the evidence in the case was submitted in accordance with the legal requirements.

Finding no error in the procedure, the judgment of the trial court is affirmed.

### ON MOTION FOR REHEARING.

KRUEGER, Judge.

Appellant has filed a formal motion for rehearing in which he contends that this court erred in disposing of some of the bills of exception adversely to his contention. He has not directed our attention to any particular bill nor stated in what respect the court erred in disposing of the same. However, we have again reviewed the record but remain of the opinion that the case was properly disposed of on the original submission.

The motion for rehearing is overruled.

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.