PETE GREATHOUSE V. THE STATE.

No. 22989. Delivered December 13, 1944.

640

The opinion states the case.

*J. R. Creighton,* of Mineral Wells, for appellant.

*Ernest S. Goens,* State's Attorney, of Austin, for the State.

KRUEGER, Judge.

The conviction is for an assault with intent to murder without malice. The punishment assessed is confinement in the state penitentiary for a term of one year.

The evidence adduced by the State, briefly stated, shows that on the evening of the 23rd of April, 1944, Travis Edgar, the injured party, Elbert P. Elmore, and Donald R. Endresen, being soldiers stationed at Camp Wolters, came to the town of Mineral Wells. Upon their arrival they parked their automobile across the street from a bowling alley at which time Endresen remarked that he saw some one over there whom he knew; that he got out of the car and went to the bowling alley and returned in a few minutes in company with two women, one of whom was

a sister of the appellant's wife. The two women got into the car with Elmore and Endresen, occupying the rear seat, while Travis Edgar alone occupied the front seat. They rode around town until about 11:30 or 12:00 o'clock midnight, when they parked near a bus station and talked. In a short time the appellant's wife, who was employed as a waitress at the Blue Bonnet Cafe, was relieved from duty; and when her sister saw her and another girl come from the cafe, she called to her to get into the automobile; that while she was standing near the front door on the right-hand side of the car talking, appellant suddenly appeared on the scene, jerked open the front door of Edgar's car and began shooting Edgar. One of the bullets passed through his body, one through his arm and two in the right leg, one taking effect above the knee and the other below the knee. The attending physician testified that the wound through the body was a serious one and such as ordinarily would produce death.

Appellant's wife and her sister both testified that she (appellant's wife) had a date with Edgar; that when she was relieved from her duty she intended to go with the other occupants of the car to a dance at Fort Worth; that when appellant appeared she was sitting in the front seat of the car beside Edgar ready to start on their journey.

Appellant testified that at the time of the occurrence he and his wife had been separated for about three weeks but on the day in question had settled their trouble and become reconciled; that his wife had theretofore had dates with another soldier whom he had lectured in no uncertain terms and who had promised to let her alone; that on the night in question when he saw his wife get into the car with some soldiers, he went to the car to talk to them; that Edgar (the soldier in the front seat) kicked him, and one of the soldiers in the rear seat struck him with his fist, which caused him to believe that he was in danger of death or serious bodily injury, whereupon he shot in self-defense.

The State, on cross-examination of appellant's wife, developed the fact that she had made a statement to the sheriff and to the District Attorney soon after the occurrence in which she said that she did not get into the car and never at any time had a date with Travis Edgar; that she remembered Lieutenant Hughes coming to her several days after the occurrence; that he talked to her, at which time she told him that she had not gotten into the car with Edgar; that she changed her statement because she desired to tell the truth; that her statement to the parties mentioned was not true.

Mrs. Doloris Mallory (sister of appellant's wife) testified on cross-examination that on the night in question after the shooting, she stated to the District Attorney and the sheriff that when they parked at the bus station, she and a lady friend intended to go to a midnight show; that when she saw her sister coming from the cafe she called to her for the purpose of asking her to go with them; that appellant's wife did not get into the car but had just come up to the car and stuck her head in when appellant appeared and started shooting; that they were not waiting for her sister (appellant's wife) and had no intention of picking her up, but that statement was not true. She further testified that she appeared before the grand jury and testified to the same facts as she had related to the officers on the night in question; that her testimony before the grand jury was reduced to writing, signed and sworn to by her but that it was not true; that it was a lie.

At the conclusion of the testimony appellant requested a special instruction to the jury to return a verdict of not guilty, which the court declined to give, and we think properly so. The evidence is ample to sustain the jury's conclusion of the appellant's guilt.

Appellant brings forward four bills of exception. The first bill complains of the cross-examination of appellant's wife by the District Attorney in propounding to her the following questions:

"Q. When did you decide to tell that kind of a story about what happened? A. Well, I don't know exactly; that night when it happened I was scared and I was mad.

"Q. Today is the first time you have told it that way, isn't it? A. That's right.

"Q. In other words, heretofore you have never told it that way; you have always said you never did get in the car? A. That's right."

To all of which appellant objected on the ground that it was an attempt to make his wife testify against him. We think the cross-examination of the witness was germane to the testimony given by her on direct examination and that she was subject to impeachment the same as any other witness by showing that she had made a voluntary statement out of court contradictory of her testimony given on the trial. See Barrow v. State, 126 Tex. Cr. R. 504; Huey v. State, 155 S. W. (2d) 61, and authorities there cited. Appellant, in his brief, contends that his wife had

appeared before the grand jury which returned the indictment and that it was an indirect effort on the part of the District Attorney to make the witness testify against her husband in accordance with her testimony given before the grand jury. We have searched the record but do not find one word therein which indicates that she ever appeared before the grand jury. In disposing of the question, we are bound by the record. We, therefore, overrule his contention.

By Bill of Exception No. 2 appellant complains of the action of the District Attorney in his cross-examination of the appellant, in propounding the following question: "You did take a swing at another soldier?" To which appellant objected on the ground that the incident inquired about was immaterial and prejudicial to the rights of the appellant; that it was another and different transaction than the one for which he was on trial. Thereupon, the District Attorney remarked: "We think it is on the whole and as to his general attitude." To which appellant again objected. This bill is qualified by the trial court and sets out the proceedings leading up to the question complained of as follows:

"Q. You never had known him when you went up there and started shooting at him, A. I did not.

"Q. You just went down to get yourself a soldier because you was mad at the soldiers? A. Not mad at them; I got a boy now in uniform.

"Q. You did take that swing at another soldier?"

Appellant objected on the ground that it was immaterial and inadmissible, to which the District Attorney replied: "We think it is on the whole and is to his general attitude." The court instructed the jury that if it was a separate act and conduct other than that for which he was on trial here, it is not admissible for any purpose, and that they should not consider it at all in arriving at their verdict in the case. If the matter inquired about was a part of the same transaction or was done by him in connection with the same act, it is a part of the res gestae and as such is admissible. However, we think that the court's instruction to the jury not to consider it if it related to a separate and distinct transaction was sufficient to remove any prejudicial effect, if any, which it may have had.

Bill No. 3 complains of the following question propounded by the District Attorney to the appellant:

"Q. You made the statement (that) your home had been broken up by the soldiers; and didn't you further make the statement that you didn't have any reason to complain because that was the way you got her? (meaning defendant's wife)."

To which appellant objected on the ground that it was highly prejudicial, inflammatory and immaterial, whereupon the District Attorney remarked: "That that was the way he felt about it" (referring to the defendant). The objection was overruled by the court and appellant excepted, whereupon the District Attorney re-framed the question as follows:

"Q. I just asked you if you made that statement, that your wife had been stolen away from you, but you didn't have any reason to complain because that is the way you got her?"

To which appellant replied: "I don't remember it." The District Attorney then remarked: "If you don't remember it, O.K." Appellant objected to the questions and answer upon the grounds above stated. In view of the reply and the District Attorney's action in leaving the subject of inquiry at that point, we fail to perceive any error in the matter complained of. That it did not prejudice him in his legal rights is apparent from the action of the jury in assessing the lowest punishment prescribed by law. The evidence would have sustained a much heavier penalty.

By Bill of Exception No. 4 appellant complains of the action of the trial court in overruling his motion for new trial based on the court's action in declining to submit his special requested charge for a peremptory instruction and upon the grounds set forth in the various bills of exception.

No reversible error appearing from the record the judgment of the trial court is affirmed.

The forgoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.