### SELLERS VINES V. THE STATE.

No. 1878.  Decided June 12, 1912.

Rehearing denied June 28, 1912.

**1.—Murder—Evidence—Motive.**

Upon trial of murder there was no error in admitting testimony that defendant was charged with crime in another county, had escaped and resisted arrest, to show motive in slaying deceased, who was an officer.

**2.—Same—Evidence—Pistol Used.**

Where, upon trial of murder, there was some question as to the identity of the person who did the killing, there was no error in introducing evidence as to the character of pistol defendant wore, and showing that it was of the same caliber as the pistol with which the homicide was committed.

**3.—Same—Evidence—Location of Wound.**

Upon trial of murder, there was no error in permitting the undertaker to testify as to the point of entrance and the exit of the ball, he showing familiarity with wounds of that character.

**4.—Same—Evidence—Bill of Exceptions—Change of Venue.**

In the absence of a bill of exceptions to the court's ruling on evidence, and the order overruling the application for change of venue the same can not be considered on appeal.

**5.—Same—Jury and Jury Law—Race Discrimination—Challenge.**

In the absence of a bill of exceptions, and there being no evidence in the record, the question as to race discrimination in the jury, and challenge thereto can not be considered on appeal.

**6.—Same—Charge of Court—General Objections.**

Where the objections to the court's charge are of a general character, and do not point out the errors, the same can not be considered on appeal.

**7.—Same—Sufficiency of the Evidence—Charge of Court—Self-Defense.**

Where, upon trial of murder, it was doubtful whether the evidence raised the issue of self-defense, but the court nevertheless submitted a charge thereon, and the evidence was sufficient to sustain a conviction of murder in the first degree, assessing the death penalty, there was no error.

Appeal from the District Court of Grayson.  Tried below before the Hon. B. L. Jones.

Appeal from a conviction of murder in the first degree; penalty, death.

The opinion states the case.

*Fannin & Underwood,* for appellant.

*C. E. Lane,* Assistant Attorney-General, for the State.

HARPER, JUDGE.—Appellant, under a proper indictment, was adjudged guilty of murder in the first degree and his punishment assessed at death.

The evidence introduced in behalf of the State would show that two car inspectors of the H. & T. C. Railway, on the night of the 27th

of September last, while engaged in their work found appellant in a
car, and reported that fact to deceased, an officer of Grayson County,
and who was also employed by the railroad as night watchman in the
yards at Sherman to take care of irregularities, attempts to break box
cars, and arrest all trespassers. A witness says deceased was cautioned
to look out for men breaking in cars and men sleeping in cars, as the
road had suffered from several thefts and burglaries. When the car
inspectors reported to Mr. Mounger that appellant was in the car, he
started in that direction to investigate, and when near this car, he
asked one of the inspectors, "Which car was he in;" the inspectors say
that deceased had his pistol in one hand, and a little flash light in the
other. About the time deceased was near or at the door of the car, in
which appellant had been seen, a pistol was fired, the flash coming out
of the door of the car. The bullet struck the deceased in the back
on the left side and ranged across and to the front and came out near
the right nipple. He sank to the ground and died in a few minutes.
The next day appellant was arrested about four and a half miles south
of Sherman by the sheriff. Mr. McAfee says he and others were search-
ing for him when they saw a negro jump and run, and he and others
took after him. The negro ran about one hundred yards and laid
down on the embankment. When he got up, the sheriff says he "threw
down on him, and said "give up that gun," when appellant replied,
"Oh, I haven't got any." The sheriff returned to the spot where he
saw appellant get up and found a Colt's 45 six-shooter in the grass.
There was one loaded and one empty shell in the pistol; the pistol
bore evidence of having been recently fired. None of the witnesses
testifying to these facts had ever seen appellant before the night of
the killing, and as circumstances in the case, it was proven that de-
ceased was shot with a pistol of 45 calibre; that this pistol, found
where appellant was seen to get up, had been taken by appellant away
from an officer at Wills Point a short time prior to this occasion. The
pistol was positively identified by D. L. Riley, and appellant was posi-
tively identified as the man who took it from Mr. Orsborne by a num-
ber of witnesses. As furnishing a motive for the crime, it was shown
that appellant was charged with robbery in Dallas County, and had
broken jail and escaped about two weeks prior to this killing, and was
at the time a refugee from justice. When he broke jail he was first seen
at Wills Point; upon being approached by an officer, before a word was
spoken, he grabbed the officer, and it was at this place he took the pis-
tol away from the officer. After getting possession of the pistol, he
told Mr. Orsborne "to get" and that officer hastily did so. Mr. Wilson,
a deputy sheriff of Van Zandt County, seeing the difficulty between
Mr. Orsborne and appellant, fired at appellant, who returned the shot,
several shots being exchanged, appellant escaping. Appellant then went
to Bowie County, where an officer again attempted to arrest him and
failed, and when next seen was the night he killed officer Fred Moun-
ger.

After all these circumstances had been proven, appellant took the stand in his own behalf, admitted he did the killing, saying he was on his way to Dallas to surrender; that he had been shot by the officer at Wills Point and in Bowie County, when the officers attempted to arrest him, and on the night of this killing, after the car inspector passed, he dozed off, when ·a light flashed in his face, and a man had a pistol drawn on him; nothing was said by either party, and he grabbed his pistol and fired, firing out of the door to scare the man away, so he could escape.

Appellant objected to the evidence, showing that he was indicted for robbery in Dallas County, had escaped and to Sheriff Brandenburg identifying him as the man so indicted and who had escaped. It was shown by the evidence that appellant had never seen deceased until the time he killed him. So if this evidence was not admissible, it would be a killing without motive or incentive, and the jury would hardly have inflicted the death penalty. Mr. Wharton in his work on Evidence, says: Evidence of every material fact or circumstance that will throw light on a homicide, and every motive that might have influenced the mind of the accused is admissible, and all facts and circumstances that tend to show motive on the part of the accused are relevant; and in Dill v. The State, 1 Texas Crim. App., 287, this court held: Where it is shown that a crime has been committed and the circumstances point to the accused, facts tending to show a motive, though remote, are admissible in evidence, and in that case an indictment charging the defendant with a different crime was held admissible, and the further fact that deceased was a witness for the State in that case. Other cases so holding: Jones v. State, 4 Texas Crim. App., 442; Rucker v. The State, 7 Texas Crim. App., 560; McKinney v. The State, 8 Texas Crim. App., 639; Powell v. The State, 13 Texas Crim. App., 252; Johnson v. The State, 29 Texas Crim. App., 150; Crass v. The State, 31 Texas Crim. Rep., 314, and a long list of decisions cited in these cases. Thus, in this case it was permissible to show that appellant was charged with crime in Dallas County, had escaped, resisted arrest in Van Zandt and Bowie Counties, and the other circumstances introduced, for they all shed light on the actions of appellant at the time of this killing, and tending to show his motive in slaying deceased, to take life rather than suffer detection and arrest. The evidence in regard to the pistol was admissible on the question of identity of defendant as the person who did the killing. The State's witnesses never having seen the defendant before the night of the killing, and no person testifying positively he fired the shot, but all the circumstances indicating that he did, the fact that a wound was made with a 45 calibre ball; a pistol of that calibre being found where he was seen to start running, being freshly fired, the ownership and possession of that pistol was a material issue, and any and all legitimate evidence which would prove that defendant was in·possession of that identical weapon on the night of the killing would be admissible. Neither did the court

err in permitting the undertaker to testify as to the point of entrance and exit of the ball, he showing a familiarity with wounds of that character, and giving reasons for his statements. The objections might go to the weight, but not to the admissibility of the testimony.

In the motion for a new trial, complaints that the court erred in admitting testimony as shown by bills of exceptions Nos. 1 to 50 can not be considered, except wherein a bill of exceptions appears in the record. There are but five bills in the record, one of them being endorsed: "The bill can not be allowed for the reason that the evidence was not objected to by defendant, nor was there any motion made to exclude it." This one, of course, can not be considered. The other four present no error, and are discussed in the foregoing paragraphs of the opinion. There being no bill of exceptions to the order overruling the application for a change of venue, and no evidence in the record, if any offered, on this motion, we can not review the action of the court in that particular.

All those questions raised in the motion for new trial, about there being no negroes on the jury panel, not being served with a copy of the special venire, etc., not being presented in a bill of exceptions, and there being no evidence in the record in regard to such matters, present no error.

Neither can we consider the grounds alleging that the court erred in overruling challenges to certain jurors. The questions propounded, nor the answers of the jurors are not in the record; no bill of exceptions appears in the record, and this question can not be raised in the motion for new trial alone, with no evidence to sustain the allegations.

Such complaints of the charge of the court as the following are too general to be considered:

"Because the court erred in all that part of its charge beginning with paragraph 1 and extending to and including paragraph 12, in which charge the issue of murder in the first degree is submitted to the jury, because said issue is not raised by the evidence, and permits the jury to find defendant guilty of a crime not supported by the evidence, said error being material and calculated to injure the rights of the defendant.

"Because the court erred in all that part of its charge beginning with paragraph 13, and extending to and including paragraph 17, wherein the court submitted to the jury the issue of murder in the second degree because said issue is not raised by the evidence and permits the jury to find the defendant guilty of a crime not supported by the evidence, said error being material and calculated to injure the rights of the defendant.

"Because the court erred in all the part of its charge beginning with paragraph 20 and ending with paragraph 23 in which the court submits to the jury the issue of manslaughter, because said issue is not raised by the evidence and said charge permits the jury to find the defendant guilty of a crime not supported by the evidence in the rec-

ord, said error being material and calculated to injure the rights of the defendant."

The only question that could be considered under these assignments is the sufficiency of the evidence, and as the evidence amply supports the verdict of murder in the first degree, it need not be discussed. The complaint of the charge of the court on self-defense is rather general, but the court instructed the jury: That if they believed from the evidence, beyond a reasonable doubt, that defendant shot and killed deceased, but at the time it reasonably appeared to defendant, from the act or acts of deceased, that he was in danger of losing his life, or in danger of suffering some serious bodily injury, such killing would be justified, and if the jury so believed, or had a reasonable doubt thereof, they would acquit. As it is not undertaken to point out specifically any error in the charge in this respect, we do not deem it necessary to discuss the charge at length. In fact, it is a very doubtful question, if the evidence called for any charge on self-defense. Defendant does not claim to have ever met deceased before; admits he did not say a word to him, and only bases the claim on the fact that deceased appeared at the door of the car with a pistol in his hands. In the first place, this is contradicted by all the other evidence, and the physical facts show the bullet entered in the back or the left side, the ball ranging to the front, and coming out in front. Deceased could not be standing in the door, looking towards appellant, with a pistol pointed in his direction. But if we take the testimony of appellant alone, it does not raise the issue. Until deceased had, by some word spoken, or act done, been guilty of such conduct as would indicate to a reasonable mind that he intended to inflict some injury on the person seeking to justify his conduct, the issue would not be presented. If the parties had known each other; there had been threats or previous ill will, appearances of danger would be viewed in a different light. But to a man who did not know the other, the fact that such other man was passing along the track, and threw a light in the car and had a pistol in his hand hanging down by his side, could hardly justify one shooting to kill before a word is spoken, or act done. Neither does the evidence raise the issue of accidental killing. Appellant admits he fired the shot out of the door, and while he says he did it to frighten away the man, that he might escape, yet when one intentionally turns loose a deadly missile in the direction of another, knowing, as he must, that it may and probably will produce death, can not claim that it was an accidental killing. From a careful review of the entire record, there is no error that should reverse the case. The evidence conclusively, to our minds, established a wanton and malicious killing. Appellant was a refugee from justice; had, prior to this, shown a determination not to be rearrested, and when deceased appeared at or near the door of the car, he was fired upon, and from the course of the bullet we are satisfied he had never seen appellant at the time. His lips are closed, and he can not give us his version, but the circumstances all establish

that appellant killed him to prevent what he feared would be an arrest on the case pending against him in Dallas County. To our mind there are no justifiable or extenuating circumstances in the·evidence.

The judgment is affirmed.

*Affirmed.*

[Rehearing denied June 28, 1912.—Reporter.]