### A. G. HOUSETON v. THE STATE.

No. 4785.  Decided May 29, 1918.

1.—Murder—Evidence—Husband and Wife—Cross-examination.

Where the accused introduces his wife as a witness, the State, on cross-examination, is entitled to ask her as to all matters germane and pertinent to her testimony given on her direct examination, and where, upon the instant trial, the matters inquired about had such relation to the direct testimony of the wife, and were so necessarily important to elucidate the truthfulness of her testimony in chief and related thereto, there was no reversible error. Following Dobbs v. State, 54 Texas Crim. Rep., 550, and other cases.

**2.—Same—Evidence—Expert Testimony.**

Upon trial of murder there was no error in permitting a surgeon, who was an expert, to testify that the bullet in this instance could have taken the range it did, fired into a man lying on the fence. Following Pullen v. State, 70 Texas Crim. Rep., 156, and other cases.

**3.—Same—Bill of Exceptions—Explanation by Court.**

Where defendant accepted the bill of exceptions as to the State's manner in examining the witness, as explained by the court, there was no error.

**4.—Same—Evidence—Res Gestae—Self-serving Declaration.**

Where defendant complained that the court erred in refusing to permit a certain witness to testify as to certain statements made by defendant to said witness soon after the shooting, but the record on appeal showed that this was not res gestae, but a self-serving declaration, there was no reversible error. Besides, the bill of exceptions was defective.

Appeal from the District Court of Travis. Tried below before the Hon. George Calhoun.

Appeal from a conviction of manslaughter; penalty, five years imprisonment in the penitentiary.

The opinion states the case.

*Dickens & Dickens,* for appellant.—On question of cross-examination of wife: Maclin v. State, 65 Texas Crim. Rep., 384, 144 S. W. Rep., 951; Johnson v. State, 65 Texas Crim. Rep., 50, 138 S. W. Rep., 1021; Mitchell v. State, 77 Texas Crim. Rep., 404, 179 S. W. Rep., 116; Roberts v. State, 74 Texas Crim. Rep., 150, 168 S. W. Rep., 100; Young v. State, 59 Texas Crim. Rep., 137, 127 S. W. Rep., 1058.

On question of res gestae: Knight v. State, 55 Texas Crim. Rep., 243, 116 S. W. Rep., 56; Douglas v. State, 54 Texas Crim. Rep., 639; Garcia v. State, 70 Texas Crim. Rep., 485, 156 S. W. Rep., 939; Ward v. State, 70 Texas Crim. Rep., 393, 159 S. W. Rep., 272.

*E. B. Hendricks,* Assistant Attorney General, for the State.—On question of cross-examination of wife: Taylor v. State, 74 Texas Crim. Rep., 3, 167 S. W. Rep., 56, and cases cited in opinion.

On question of res gestae: Harris v. State, 67 Texas Crim. Rep., 251, 148 S. W. Rep., 1074, and cases cited in opinion.

PRENDERGAST, JUDGE.—Upon indictment charging appellant with the murder of J. L. Jeffreys he was convicted of manslaughter.

The proof shows that about April 3, 1916, deceased went to appellant's home and made a contract with appellant's wife to enlarge a picture of her father for her which he was to deliver about a month later and for which she was to pay him $2.98. That about May 2nd following deceased had enlarged the picture as contracted, took it to her house and delivered it to her. At the time she told him she did not have the money to pay him but requested that he call in a few days when she would pay him. About two days later he called at her house to get his

pay, stepped upon her gallery, knocked at her door and appellant went to the door when deceased told him what his business was. Appellant claimed not to know anything about it and called his wife to him at the door and asked her about it in his presence. She denied in substance that deceased had enlarged and left with her any picture. Appellant claims deceased then said, "You are a God damned liar," and that he, appellant, told him to leave his house, and he claims that deceased then struck him on the thumb, skinning it and drew blood therefrom, and thereupon made a hip-pocket play as if to draw a pistol and shoot him. That he thereupon turned, stepped back to his bed, procured his pistol from under the head thereof and turned and shot deceased in self-defense, and that after he shot him deceased ran, jumped off his gallery, ran out of his yard and fell just outside of his gate, and that he, appellant, followed him and as deceased was struggling to get up he struck him over the head with his large .44 pistol. The State proved that deceased was wholly unarmed, had no pistol or other weapon and not even a pocketknife. The State proved by some four eyewitnesses that appellant did not shoot deceased while he was on his gallery, but, in fact, that when appellant got his pistol deceased ran, jumped off the gallery, ran some twenty feet to the yard fence, placed his hands thereon and jumped over, and that appellant shot him in the right side as he was jumping over the fence. That appellant was running after him from the time deceased began running and that after he had shot him as stated by the State's witnesses, he fell outside of the yard in a helpless condition and that appellant continued until he reached the fence himself and then reached over and struck deceased on the head with his pistol.

The appellant introduced his wife as a witness, who testified for him, and among other things testified that deceased came to her home with said enlarged picture on May 2nd and delivered it to her. She also testified as to the actions, conduct and conversations of the deceased on that occasion. The State, over his objection, was permitted to ask his wife on cross-examination if anyone came to her house with deceased on that occasion, and if Mr. Palmie did not come with him and was there with him on that occasion. His objection was that his wife could not be asked any such question because he, in his direct examination of her, had not asked her whether anyone was with deceased at the time or whether or not Mr. Palmie was with him. She testified that deceased came alone and that Mr. Palmie was not with him.

The court in allowing his bill on this subject did so with the statement that the witness Mrs. Houseton, on her direct examination by appellant, testified as a part of her direct examination that on Tuesday before the killing deceased came to her house and brought a picture that she had ordered, and that she had a conversation with him in regard to the picture while standing on her front porch, and detailed said conversation. That she did not testify on direct examination as to whether or not anyone was present at the time or whether or not anyone came

to her house with deceased on said occasion. That on cross-examination of her the court permitted the district attorney to ask her if anyone came with the deceased to her house the day he delivered the picture to her and to ask said question because it was not independent testimony sought to be elicited by the district attorney upon a matter not testified by the witness in her examination in chief, but was as to a matter which was directly pertinent and germane to matters drawn out and testified to by the witness in her direct examination in chief.

The record shows that later in rebuttal the State introduced the witness Palmie, who testified that he went with deceased in a buggy to Mrs. Houston's on the occasion when he delivered the picture and to what was said and done about delivering the picture to Mrs. Houseton and a part of the conversation that occurred between them at the time. Appellant made no objection whatever to this testimony by the witness Palmie.

Appellant has another bill complaining of the action of the court in permitting his wife to be cross-examined by the State on another matter. What the record and this bill show will now be stated.

The first witness introduced by appellant after the State rested was Mr. Barbisch. The State on cross-examination of him without any objection by appellant had him to testify to a conversation between him, the appellant and his wife, the three being present, a short time after the killing in which he testified that appellant's wife stated to him in the presence of her husband that she had never seen Mr. J. L. Jeffreys (deceased) before the day of the killing in her life and did not know who he was. After Mr. Barbisch had so testified appellant introduced, as stated, his wife, who testified in his behalf. The court explained his bill on the subject, stating that in her direct testimony she testified that the deceased had come to her house some days previous to the killing and had solicited an order for the enlargement of the picture of her father, and detailed the conversation that occurred between her and deceased at the time. That she also testified in her direct examination that deceased had come back and delivered the picture to her and detailed the conversation that occurred between her and him at that time, and that in cross-examination of her he permitted the district attorney to ask if she had not in the presence of her husband stated to Mr. Barbisch on the said occasion that she had never seen deceased before the day of the killing in her life and did not know who he was, which she denied. The court further explained that the State offered the testimony and it was admitted by the court for the purpose of contradicting her as to the statements made by her in her direct testimony and as being pertinent and material testimony on a subject testified to by her in her direct examination by the defendant.

Neither of these bills shows reversible error. It is well established that where an accused introduces his wife who testifies in his behalf, the State on cross-examination of her is entitled to ask her as to all matters germane and pertinent to her testimony given on her direct

examination. As stated by this court, through Judge Davidson, in Jones v. State, 38 Texas Crim. Rep., 115, "Of course, everything which is legitimate for the purpose of testing her knowledge of the facts sworn to, her bias, her prejudice, in fact, any matter that goes legitimately to discredit her, is admissible on cross-examination." Mr. Branch in 1 Branch's Ann. P. C., sec. 152, correctly states the law and cites the cases as follows: "The wife of defendant may be cross-examined as to the matters testified to by her on direct examination, and the State is entitled to ask her who was present, as to their equipment, her opportunity for observation, and other questions as tending to show the accuracy of her direct testimony, and may apply the usual tests of cross-examination as to all matters germane and pertinent to her testimony given on her direct examination. Creamer v. State, 34 Texas, 173; Hampton v. State, 45 Texas, 154; Exon v. State, 33 Texas Crim. Rep., 467; Jones v. State, 38 Texas Crim. Rep., 87; Merritt v. State, 40 Texas Crim. Rep., 359; Buchanan v. State, 40 Texas Crim. Rep., 127; Dobbs v. State, 54 Texas Crim. Rep., 550; Morrow v. State, 56 Texas Crim. Rep., 519; Ferguson v. State, 57 Texas Crim. Rep., 205; Brown v. State, 61 Texas Crim Rep., 334; Swanney v. State, 66 Texas Crim. Rep., 293, 146 S. W. Rep., 548; Reagan v. State, 70 Texas Crim. Rep., 498, 157 S. W. Rep., 483; Northcutt v. State, 70 Texas Crim. Rep., 577, 158 S. W. Rep., 1004; Taylor v. State, 74 Texas Crim. Rep., 3, 167 S. W. Rep., 59; Roberts v. State, 74 Texas Crim. Rep., 150, 168 S. W. Rep., 100." In Dobbs v. State, 54 Texas Crim. Rep., 550, this court, through Judge Ramsey held: "It appears that the witness was not asked on direct examination whether anyone else was present, and was not asked anything about deceased's little boy. On cross-examination, evidently believing that her statement was untrue, and desiring to test the accuracy and substantial truthfulness of it, counsel for the State asked her many questions in respect to the little boy of deceased, who was with him, and developed from her in substance, that she had not seen the boy. They also asked her in reference to whether deceased was driving a horse or a mule; they also asked her many questions in respect to just where she was when the fatal encounter ensued and her opportunity of seeing the killing. We think all the matters were so inextricably and closely connected with matters testified to on direct examination that her testimony would under any fair rule be admissible. This court has gone quite far enough in limiting the scope of the cross-examination of the wife. We think, however, in this case there can be no doubt that the matters inquired had such relation to the direct testimony of the wife, and were so necessarily important to elucidate the truthfulness of her testimony in chief, and so obviously related thereto as not to be the subject of substantial complaint." In Buchanan v. State, 41 Texas Crim. Rep., 129, the appellant's wife therein testified for him. On cross-examination, over his objection, the State was permitted to ask and have her answer the following questions: "Have you not taken great interest in behalf of your husband in this defense? A. I do not know that I

have. Q. Is it not a fact that you have gone to the prosecutrix and told her not to know anything when put on the stand, and not to tell anything while on the stand, or swear anything, in the town of Seymour, on yesterday or the day before, or words to that effect? A. I have not. Q. Have you had any conversation with her? A. Yes, on yesterday at the hotel, but said nothing like that." This court held: "It appears from the foregoing questions and answers that the appellant's wife was not forced or permitted to answer anything against appellant. Furthermore, we think the questions were admissible on cross-examination." As shown above, the wife in this instance testified nothing against appellant in answer to the questions asked her by the district attorney on cross-examination, but on the contrary the answers she gave were directly in favor of him and the questions asked her on cross-examination were "as to matters germane and pertinent to her testimony given on her direct examination."

Dr. Scott, a surgeon and an expert, attended deceased from very soon after he was shot until he died the next day. He testified fully as to the wound, the place of entry, and range of the bullet. The court did not err in permitting him as such expert to testify over appellant's objections that the bullet in this instance could have taken the range it did, fired into a man lying on a fence. Waite v. State, 13 Texas Crim. App., 169; Banks v. State, id., 182; Lovelady v. State, 14 Texas Crim. App., 545; Pilot v. State, 38 Texas Crim. Rep., 515; Roquemore v. State, 39 Texas Crim. Rep., 568; Vines v. State, 67 Texas Crim. Rep., 355, 148 S. W. Rep., 727; Pullen v. State, 70 Texas Crim. Rep., 156.

As explained by the court, which was accepted by appellant, his bill to the manner of the State's examining the witness Harold Parker shows no error.

Appellant has another bill complaining that the court erred in refusing to permit Mr. Ray to testify about what appellant claims in his bill to be res gestae statements made by appellant to Mr. Ray soon after the shooting. Appellant himself testified in effect that after he shot deceased, deceased ran, jumped off his gallery, ran out of his front gate and fell just outside. That he followed him, and as deceased struggled to get up after he had fallen he reached over the fence and struck him on the head a blow with his sixshooter. That he did not shoot him or anything after that, and that he stopped, turned and walked back into his house. He does not state how long thereafter he remained in his house, or what he did or said, but that later he came out of his house, stepped over his yard fence on the north, not going by the body of the deceased where he lay at his gate, and that he walked over to Mr. Ray's house, which was across two streets and some vacant lots from his house. He said: "I went over there and told him I had to shoot a man down here, and said, 'Will you come down there and do something for him?' When I asked him, told him I had to shoot a man down there and would he come down there and do something for him, his wife spoke up and said, 'No, you can't go down there.' I said, 'All right, if you feel that

way about it you had better not,'" and that he then saw another man and had him to go over and see the deceased. Mr. Ray testified that he saw the deceased. "Well directly—I don't know how long it was, but in a few minutes he, appellant, came over to my house." That he saw appellant when he left his house. That he got over the fence and came straight to the corner of his yard like. That at the time he noticed that appellant's thumb had been skinned and was bloody. Appellant then wanted Mr. Ray to testify what he at that time said to him about the shooting, etc. He claimed that he expected to show by him that appellant showed him his finger and told him that the deceased had been fighting him and had hit him on the finger; told him that the deceased had called his wife a God damned liar and he ordered him away from his place, tried to get him away from his place and that he was forced to shoot; to do what he did do. The State objected to this testimony, contending that it was not res gestae but that it was self-serving declarations by appellant and inadmissible. The court sustained the State's objection and did not permit Mr. Ray to so testify.

The bill does not show, as stated above, how long after the shooting it was before appellant went over to Mr. Ray's nor what he did or said from the time of the shooting to the time he went to Mr. Ray's, though the bill would indicate that he went to Mr. Ray's in a few minutes after the shooting. It fails to show that appellant at the time was in any way suffering so as to exclude the idea of fabrication or self-serving declaration. There is nothing in the bill to show that appellant at the time was in any way excited or agitated and nothing to indicate that his claimed declaration to Mr. Ray was instinctive and that the facts of the transaction were speaking through him. On the contrary, the testimony tends to exclude all these requisites to have made it a res gestae statement. The trial judge who heard all the testimony and that of appellant was justified in concluding that what appellant claimed to have said to Mr. Ray on this occasion was not the transaction speaking through him, but, on the contrary, was a mere relation of a past event and was not res gestae. His claimed declaration to Mr. Ray appeared to be a statement or relation of how the killing occurred and that there was a break or let down in the continuity of the transactions and statements lacking the essential characteristic of instinctiveness and was not admissible as res gestae. See the principles laid down by Mr. Branch in 1 Branch's Ann. P. C., sec. 84, and many decisions of this State cited.

The court did not err in refusing to give any of the special charges requested by appellant.

The judgment is affirmed.

*Affirmed.*